## 7909. McPHEARSON v. THE STATE.

1. The evidence authorized the charge of the court on the law of voluntary manslaughter.

2. On the trial of a criminal case it is not error for the judge to instruct the jury as to every lawful defense raised by the testimony, notwithstanding the accused makes a written request that the court instruct the jury that he relies upon one or more defenses only, and not upon a special defense named. Where the court complies with such a request, the accused can not be heard to complain; but it is within the power of the court, and eminently proper, to give the accused the advantage of every defense suggested by the evidence. Under the testimony in this case, leaving out of consideration the statement of the accused, it was not error for the court to instruct the jury touching the right of a father "to kill another on account of an injury done to his daughter, either by an effort to take her virtue, or by an assault made upon her."

3. A reversal will not be granted because the trial judge refused to give certain requested instructions to the jury, where the same matter was fully and fairly presented in the charge given. *Central of Georgia Railway Co.* v. *Blackman*, 7 *Ga. App.* 766 (68 S. E. 339); *Mixon* v. *State*, 7 *Ga. App.* 805 (7), 808 (68 S. E. 315); *Carter* v. *State*, 106 *Ga.* 372 (4), 375 (32 S. E. 345, 71 Am. St. R. 262); *Perdue* v. *State*, 135 *Ga.* 277 (5), 284 (69 S. E. 184). And where error is assigned upon the refusal to give a requested instruction to the jury, and no complaint is made that the request was not substantially covered by the charge given by the court, and the entire charge is not brought up, this court is unable to determine whether the refusal of the request was erroneous; and where it neither appears from the bill of exceptions nor from the record that the charge of the court was ever reduced to writing or was of file in the office of the clerk of the court below (Penal Code, §§ 1056, 1057), this court will not order it sent up under section 6149 (4) of the Civil Code. *Perdue* v. *State*, 17 *Ga. App.* 299 (86 S. E. 661). See also *Hawkins* v. *Collier*, 106 *Ga.* 18 (31 S. E. 755). In the absence of any assertion to the contrary, it will be presumed that the charge of the court sufficiently covered the precise doctrine referred to in the requested instruction. Therefore, that ground of the motion for a new trial which complains of the refusal to give a requested instruction relating to threats will not be considered.

DECIDED FEBRUARY 1, 1917.

Indictment for murder—conviction of manslaughter; from Floyd superior court—Judge Wright. October 2, 1916.

*F. W. Copeland*, for plaintiff in error.

*W. H. Ennis*, solicitor-general, contra.

WADE, C. J. It is not necessary to add to what is said in the headnotes, further than by calling attention in the briefest manner to the substance of the evidence which, in the opinion of this court, authorized the trial judge to submit to the jury the ques-

tion whether the accused was guilty of the offense of voluntary manslaughter, and which supports the verdict returned.

A wayward young woman's father, who had been encouraged by her recent conduct to hope for her ultimate reformation, found that she was absent from his home at night, and, guided by his knowledge of her past, armed himself with a gun and sought her in a part of a city apparently much frequented by rowdy and disreputable persons, where he was informed that she had been seen in a bawdy-house with a certain man. He finally encountered her in the street, apart from this man, and induced her to accompany him home. On the way home she informed him that this man had insulted and slapped her, and had told her, when she threatened to report his conduct to her father, that he would provide a "wooden overcoat" for the father. It appears, from other evidence, that he had in fact abused and slapped her at the time stated; and this information reached the father from another source. After the father and the daughter arrived at home, the father remained on the front-porch, the daughter entered the house, and the father assumed that she had retired to her room, though in fact she had gone to her mother's room. Some minutes later the father himself entered the house, and, failing to find his daughter in her room, concluded that she had returned to the scene of debauchery from which he had just removed her, and went back to the same locality, accompanied by his son-in-law, to discover her and bring her home. When they reached the place where he had previously found her, they encountered the man referred to, and the latter became embroiled in a difficulty with the son-in-law and shot the son-in-law, and immediately thereafter the father fired upon the man and killed him.

Cooling time is always a question for the jury, and whether or not, between the time when the father was informed of the presence of his daughter with the deceased in a lewd house, or was told by her that the deceased had abused and slapped her, and the time when he encountered and slew the deceased there was a sufficient interval for the passion to subside, which must have been instantly excited by this information, was wholly for determination by the jury; and by their verdict they declared that at the time of the killing the accused was, in their opinion, acting under the influ-

ence of irresistible passion, and not in self-defense or in other circumstances that justified the killing. It is clear that the circumstances narrated were amply sufficient to provoke in the mind and heart of the average or normal father such a burning flame of anger as might rage without abatement not only for minutes but for hours, and the accused may well have been under the overmastering influence of that passion when he encountered the deceased for the first time after he had been apprised of facts indicating the participation of the deceased in the debauching of his daughter, and an entire contempt by the deceased for his right or ability to protect a member of his family who, whatever her past, was the child of his loins,—bone of his bone and flesh of his flesh.

The trial court therefore properly charged the law of voluntary manslaughter, and the evidence was amply sufficient to support the verdict finding him guilty of this offense.

*Judgment affirmed. George and Luke, JJ., concur.*