### 24047. CANDLER *v.* SMITH.

668

*Branch & Howard, Bond Almand,* for plaintiff in error.
*Howell, Heyman & Bolding, Howell & Post,* contra.

Sutton, J. Asa G. Candler Jr. had, on the premises where he resides in DeKalb County, a private zoo, wherein he kept various wild beasts, including a certain baboon. This baboon escaped from the zoo and came upon the premises of Mrs. M. L. Smith. Mrs. Smith's automobile was parked in the driveway at her home. She started to use the automobile and discovered that it would not start. She went into her house to telephone a mechanic to fix the car. She left her pocketbook on the front seat of the automobile. When she returned, she discovered in the automobile "a large baboon, approximately the size of an Airedale dog." This baboon belonged to Candler. The sight of the baboon frightened Mrs. Smith and started towards her "in a menacing manner." Going back into her house, Mrs. Smith "tripped upon the doormat" and fell, bruising and hurting herself. She reached her residence and saved herself from being overtaken by the baboon by "slamming the door in his face." The baboon then went back to the automobile, took Mrs. Smith's pocketbook and threw out, lost, and destroyed its contents, including currency and other valuables. Mrs. Smith's fall was caused solely by the "assault upon her person made by said baboon, and was caused by the attempt of" Mrs. Smith "to escape from said menacing and advancing baboon." As a result of said baboon being in the automobile and advancing toward her, Mrs. Smith suffered a severe nervous shock and fright, and will continue so to suffer. This nervous shock was received by Mrs. Smith "as a direct result of said fall and the bruises and injuries to herself caused by said fall." Mrs. Smith brought suit for damages against Candler, alleging that the defendant was liable because he "brought and kept upon his land said wild and vicious animal, the nature of which he knew and the vicious propensities of which were apparent to him. He so kept said baboon which he had brought upon his property at his own risk, and to the severe danger of his neigh-

bors and petitioner, the said baboon was able to escape and trespass upon the land and automobile of petitioner," and it was alleged that "as a direct result of said trespass and said negligence, all of the above damages followed." She sought actual damages for the value of her property lost and destroyed by the baboon and for damages for the fall and nervous shock and fright resulting therefrom. The foregoing appeared in substance from the allegations in plaintiff's petition.

The defendant demurred to the petition generally and because it was not shown that the defendant was negligent in the manner in which the animal was kept, because no facts are alleged to support the allegations that the baboon was vicious and dangerous and that the defendant knew of his vicious propensities. The defendant further demurred to that part of the petition wherein the plaintiff sought to recover damages for fright and nervous shock, because there are no allegations of any physical injury as a result of the defendant's alleged negligence, and the plaintiff would not be allowed to recover for fright and nervous shock in the absence of any physical injury. The trial judge overruled the demurrer, and to this judgment the defendant excepted pendente lite. The case proceeded to trial and the trial resulted in a verdict in plaintiff's favor for $10,000. The defendant moved for a new trial, and to the judgment overruling the motion he excepts, assigning error also upon his exceptions pendente lite taken to the overruling of the demurrer.

1. "A person who owns or keeps a vicious or dangerous animal of any kind, and who, by careless management of the same, or by allowing the same to go at liberty, causes injury to another who does not, by his own act, provoke the injury, shall be liable in damages to the person so injured." Code of 1933, § 105-110. Under this section there are two theories on which a defendant may be held liable for injuries done by a "vicious or dangerous animal," one where he voluntarily permits the animal to roam at large, and the other where he is negligent in the manner used to prevent the animal escaping and going at large. The present action was brought upon the latter theory, the contention of the plaintiff being that the defendant "so kept said baboon which he had brought upon his property at his own risk, . . that said baboon was able to escape and trespass upon the land and automobile of petitioner."

2. When a person is injured by an attack of an animal feræ naturæ, the negligence of the owner or keeper thereof is presumed, because of the dangerous and ferocious propensities of a wild beast, such as a lion, tiger, leopard, bear, ape, baboon, and such like wild beasts, and the law recognizes that safety lies only in keeping such animals perfectly secure. It is not in itself unlawful for a person to keep wild beasts, even though they are of such a nature and kind as ·to be dangerous, ferocious, and irreclaimable. However, the owner or keeper of such dangerous creatures is required to exercise that degree of care in regard to them which will absolutely prevent the occurrence of an injury to others through such vicious acts of the animal as he is naturally inclined to commit, provided of course that the injury is not brought about by the negligence of the person injured. Under these circumstances, the occurrence of the act producing the injury affords sufficient evidence that the owner or keeper has not exercised the degree of care required of him; and, therefore, to successfully set out a cause of action against the owner or keeper of an animal feræ naturæ, it is not necessary to allege that the injury occurred by reason of the actual negligence of the owner or keeper, but an allegation that the owner brought such wild beast upon his premises and kept him there at his own risk in such a manner that the beast was able to escape and come upon the premises of the plaintiff and commit the injury complained of, is sufficient to make out a case against the defendant owner of such wild animal. See Congress &c. Spring Co. v. Edgar, 99 U. S. 645 (25 L. ed. 487) ; Parker v. Cushman, 195 Fed. 715, 117 C. C. A. 71; Gooding v. Chutes Co., 155 Cal. 620 (102 Pac. 819, 23 L. R. A. (N. S.) 1071, note, 18 Ann. Cas. 671) ; Besozzi v. Harris, 1 F. & F. 92; Decker v. Gammon, 44 Me. 322 (69 Am. D. 99) ; Lyons v. Merrick, 105 Mass. 71; Hayes v. Miller, 150 Ala. 621 (43 So. 818, 124 Am. St. R. 93, 11 L. R. A. (N. S.) 748, note) ; Ammons v. Kellog, 137 Minn. 551, 39 L. R. A. 351 and note; Connor v. Princess Theatre, 27 Ont. L. 466 (Ann. Cas. 1914A, 762) ; Serio v. American Brewing Co., 141 La. 290 (74 So. 998, L. R. A. 1917E, 516) ; Barrett v. State, 220 N. Y. 423 (116 N. E. 99, Ann. Cas. 1917D, 907, L. R. A. 1918C, 400) ; Laverone v. Mangianti, 41 Cal. 138 (10 Am. R. 269) ; Phillips v. Garner, 106 Miss. 828 (52 L. R. A. (N. S.) 377, 64 So. 735) ; Beckett v. Beckett, 48 Mo. 396; Muller v. McKesson, 73 N. Y. 195 (29 Am. R. 123) ; Common-

wealth v. Fourteen Hogs, 10 Serg. & R. 393; Filburn v. People's Palace &c. Co., 25 Q. B. D. 258; Missio v. Williams, 129 Tenn. 504, 167 S. W. 473.

(a)  So, where it is alleged that a monkey or baboon (being classed as an animal feræ naturæ) had escaped from its place of confinement and come upon the plaintiff's premises and there committed the injury complained of, this is sufficient to withstand a demurrer, even though it is not stated in the petition how the escape was effected.  It is not necessary to allege that the owner was negligent in allowing the animal to be at large, for he is bound to keep it secure at his peril.  See Phillips v. Garner, supra; Popplewell v. Pierce, 10 Cush. 509; May v. Burdett, 9 Q. B. 101 (115 Eng. Reprint, 1213, 3 Eng. Rul. Cas. 108); Parsons v. Manser, 119 Iowa, 88, 92 (93 N. W. 86).

(b)  In the leading English case upon this subject it was ruled that "A person who keeps a mischievous animal with knowledge of its propensities, is bound to keep it secure at his peril; and if it does mischief, negligence is presumed without express averment. The negligence is in keeping such an animal after notice." May v. Burdett, supra.

(c)  However, it has been ruled in this country that where an animal is by nature a fierce and dangerous beast, his owner or keeper is charged with knowledge thereof.  It is not necessary to allege and prove any knowledge of such animal's ferocious habits and nature.  Earl v. Van Alstine, 8 Barb. 630; Moss v. Pardridge, 9 Ill. App. 490; Phillips v. Garner, supra; Congress &c. Spring Co. v. Edgar, supra; Hayes v. Miller, supra; note in 69 A. L. R. 511.

(d)  As was said by Lord Hale (Pleas of the Crown, 430): "Tho' he have no particular notice that he did any such thing before, yet if it be a beast that is feræ naturæ, as a lion, a bear, a wolf, yea an ape or monkey, if he get loose and do harm to any person, the owner is liable to an action for the damage, and so I knew it adjudged in Andrew Baker's case, whose child was bit by a monkey that broke his chain and got loose."

(e)  The doctrine, promulgated in some jurisdictions, that where an animal, although classed as feræ naturæ, is susceptible of substantial domestication, as the bee, deer, and monkey, the owner is not liable in the absence of proof of negligence in the

manner of keeping it, or of proof that it was of a vicious disposition, and was kept after the owner had knowledge thereof (Petey Mfg. Co. *v.* Dryden, 21 Del. 166 (62 Atl. 1059) ; Parsons *v.* Manser, Earl *v.* Van Alstine, Connor *v.* Princess Theatre, and Congress &c. Spring Co. *v.* Edgar, supra), is not applicable to the pleadings in this case, as there was no suggestion therein that the baboon had ever been trained or become domesticated to any extent. Furthermore, even in such a case, it has been held that "It is immaterial that the animal is to some extent domesticated; for the natural wildness and ferocity of its nature but sleep, and are liable to be awakened suddenly and unexpectedly on some provocation." Andrew *v.* Kilgour, 19 Man. 545 (where the injury was committed by a pet raccoon) ; Hayes *v.* Miller, supra.

2. An action for an injury arising not from the ferocious nature of the wild animal, but merely from its appearance, causing fright to a horse, has been held sustainable only on a showing of actual negligence on the part of the keeper or owner of the animal. Bostock Ferari Amusement Co. *v.* Brocksmith, 34 Ind. App. 566 (107 Am. St. R. 1260, 73 N. E. 281) ; Scribner *v.* Kelley, 38 Barb. 14. However, according to the allegations in the instant case, it was not only the sight of the baboon that caused the fright and ensuing injury and shock to the plaintiff, but also the vicious propensities of the beast in advancing upon her in a menacing manner.

3. Petitioner alleged that the sight of the dangerous baboon shocked and frightened her, that it immediately came toward her in a menacing manner, that she tripped on the doormat going back into her house and fell and bruised herself, that this fall was caused solely, proximately, and directly by the assault made by the baboon, and that the nervous shock was received by her as a direct result of said fall and the bruises to herself caused thereby. From these allegations it would seem that the fright suffered by the plaintiff, the fall sustained by her in fleeing from the advancing animal, and the nervous shock, which she further alleged has caused and will cause her to become permanently frightened and nervous, afraid of noises in the daytime, causing a nervous shock, and her experience with said baboon haunts her night and day, were all intermingled together and were caused by the presence of said baboon in the plaintiff's automobile and by his viciousness in advancing toward her in a menacing manner. In these circumstances, these allega-

tions were not subject to demurrer on the ground that there were no allegations of any physical injury as a result of the defendant's negligence, and therefore the plaintiff should not be allowed to recover for fright and nervous shock in the absence of a physical injury.

(a)  As a general rule, damages for mere fright are not recoverable; but they may be recovered where there is some physical injury attending the cause of the fright, or, in the absence of physical injury, where the fright is of such character as to produce some physical or mental impairment directly and naturally resulting from the wrongful act. *Williamson* v. *Central Ry. Co.,* 127 *Ga.* 125 (3), 131 (56 S. E. 119). Mere wrongful acts of negligence will authorize a recovery where the resulting fright, shock, or mental suffering is attended with actual immediate physical injury, or where from the nature of the fright or mental suffering there naturally follows as a direct consequence physical or mental impairment. *Hines* v. *Evans,* 25 *Ga. App.* 829 (105 S. E. 59); *Pettett* v. *Thompson,* 33 *Ga. App.* 240 (125 S. E. 779); *Cooper* v. *Meaders,* 47 *Ga. App.* 89 (169 S. E. 685). In either of such events the fright or mental suffering can itself be considered, together with the accompanying physical injury or resulting physical impairment, as an element of damage. *Atlanta Hub Co.* v. *Jones,* 47 *Ga. App.* 778, 780 (171 S. E. 470).

4.  It naturally follows from the rulings made above, that the court below did not err in overruling the defendant's demurrer to the plaintiff's petition.

5.  The defendant is not entitled to a new trial because the court charged the jury that if they believed that the baboon involved in this case was to be classed as an animal feræ naturæ, and was not susceptible of substantial domestication, it would not be necessary for the plaintiff to prove that the defendant had knowledge of the vicious and dangerous propensities of the animal in question; but that it would be necessary for the plaintiff to prove by a preponderance of the evidence that the defendant was careless in the management of said animal, or allowed the same to go at liberty.

(a)  To give section 4417 of the Civil Code (set out in the first paragraph above) the construction contended for by the defendant would render the provisions thereof in derogation of the common law. If said section of the code is just as susceptible of a construc-

tion in conformity with the common law, that construction should be adopted. This section of the code does not specifically provide that the keeper or owner of "a vicious or dangerous animal of any kind," which animal is properly classed as one feræ naturæ, shall only be liable for an injury or trespass committed by such animal where he has prior knowledge of the vicious or dangerous character of the animal. In *Harvey* v. *Buchanan,* 121 *Ga.* 384 (49 S. E. 281), and *Friedman* v. *Goodman,* 124 *Ga.* 532 (52 S. E. 892), the animals involved were mansuetæ naturæ, and therefore notice of the inclination of the particular animal to do mischief must be brought home to the owner or keeper thereof.

(*b*)   Said charge was not error in that the plaintiff alleged in her petition that the defendant brought and kept upon his premises the wild and vicious animal, the nature of which he knew and the vicious propensities of which were apparent to him.   This allegation could be properly construed that the animal in question being feræ naturæ, and one of the species considered fierce and dangerous, its vicious propensities were therefore known to the defendant, as they were known or supposed to be known to every other man of ordinary intelligence and knowledge about wild beasts and their characteristics.   The defendant testified on the trial that he was a "big-game hunter," having frequently hunted wild beasts in foreign jungles.

(*c*)   In order to hold the keeper or owner of an animal that is vicious liable for an act of viciousness committed by the animal, it is, of course, absolutely essential that the owner or keeper have knowledge of the vicious nature of the animal; but Code section 4417 does not set out how this knowledge may be acquired, and under the common law, in keeping with which we must construe this section of the code, the same not being in derogation of the common law, this knowledge is presumed to exist when the animal involved belongs to a certain class of animals feræ naturæ, such as lions, tigers, bears, wolves, baboons, apes and monkeys, etc.; and where the animal involved belongs to the class of domesticated animals, such as cows, swine, dogs, horses, cats, and the like, the vicious nature of the particular animal must have been known by the owner or keeper thereof prior to the wrongful act of the animal.

(*d*)   That part of the charge excepted to, that "it would be necessary for the plaintiff to show by a preponderance of evidence

that the defendant was careless in the management of said animal," is not correct under the facts of this case. If the animal in this case was one feræ naturæ, rather than one domititæ feræ, then it would not be necessary for the plaintiff to prove that the defendant was actually careless or negligent in its management; but it would be sufficient to prove that the defendant had the wild beast (was its owner or keeper) upon his premises and that the animal escaped, came upon the premises of the plaintiff, and there committed the injury complained of. Proof that a wild beast was not so restrained as to avoid the injury to the plaintiff is tantamount to proof of negligence in its keeping. The fact that the animal was at large is proof that it was not so restrained. The owner or keeper of an animal feræ naturæ is bound to keep the animal secure at his peril. Note, 69 A. L. R. 502, and cit. While this portion of the charge was not correct, it was favorable to the defendant and can not be assigned by him as error entitling him to a new trial.

(e) Furthermore, the plaintiff introduced evidence tending to show that the defendant was careless in the manner of keeping the animal involved in this case, in that he kept it in a cage near where an elk was kept and it was an easy matter for the elk to tear a hole in such cage with his horns, which the elk did, thus allowing the animal in question to escape. A jury could easily find that this constituted negligent keeping, under the facts of this case. Also it appeared from the evidence that this particular animal had bitten others prior to the time it escaped and came upon plaintiff's premises.

6. The defendant duly requested the court to give in charge to the jury the provisions of sections 4502, 4506, 4507, 4508 and 4509 of the Civil Code, on the subject of damages. It is ground for a new trial for the court to "refuse to give a pertinent legal charge in the language requested, when the charge is submitted in writing." Civil Code (1910), § 6084. However, "a reversal will not be granted because the trial judge refused to give certain requested instructions to the jury, where the same matter was fully and fairly presented in the charge given." *McPhearson* v. *State*, 19 *Ga. App.* 232 (3) (91 S. E. 336), and cit. Plaintiff was only seeking to recover such damages as the law allowed as compensation for pain and suffering, contending that she had suffered and was continuing to suffer from the ailment called neurosis, which was the direct

result of being frightened by the defendant's baboon and of its causing her to fall; and the damages sustained by her when the alleged wild animal destroyed and lost the contents of her purse, including a sum of money. The court fully instructed the jury, in this connection, that if they believed the plaintiff was entitled to recover, and believed that she suffered pain and permanent resulting injuries, they should "award her on this classification of damage such sum as you believe would be fair compensation for her pain and suffering, such sum as would receive the approval of your enlightened consciences," and that the law declares that there is no other standard by which the amount of such damages "can be measured except the enlightened consciences of impartial jurors," and that the jury could take into consideration "what sort of injuries she received, their character as to producing or not producing pain, whether they have ceased or whether they will continue in the future." *L. & N. R. Co.* v. *Maffett,* 36 *Ga. App.* 513 (137 S. E. 404). The court then properly instructed the jury how to determine the amount of property damage sustained by the plaintiff. In these circumstances, the failure of the court, though duly requested, to give in charge the literal language of the above sections of the code is not cause for the grant of a new trial.

(b) The charge of the court as a whole was fair and just to both parties; and while it would not have been error as against the plaintiff for the court to have given to the jury some of the instructions requested by the defendant, under the facts of this case, there being no evidence going to show that the plaintiff's physical condition was brought about by any other cause than the alleged tortious act of the defendant, except possibly by way of innuendo, we do not think that the failure of the court to give such requested instructions, particularly those relative to remote damages, etc., requires the grant of a new trial.

7. A new trial will not be granted because of the assignments of error concerning testimony as to animals being brought upon the premises of the defendant and into his zoo, after the alleged injury to the plaintiff. There was other evidence as to the same matters, to which the defendant did not object, before the jury. In fact the defendant so testified himself. *Selman* v. *Manhattan Life Insurance Co.,* 20 *Ga. App.* 440 (93 S. E. 60); *City of Atlanta* v. *Hawkins,* 45 *Ga. App.* 847, 849 (166 S. E. 262); *General Tire &*

*Rubber Co.* v. *Brown Tire Co.*, 46 *Ga. App.* 548 (3 *c*) (168 S. E. 75).

(*a*) Moreover, said evidence was admissible to illustrate and shed light on the plaintiff's alleged nervous condition.

8. The court did not err in allowing the depositions of a witness to be read in court by the plaintiff, although the witness was present in court and could have been placed upon the witness stand by the plaintiff. See *W. & A. R. Co.* v. *Bussey*, 95 *Ga.* 584 (23 S. E. 207) ; *Southern Ry. Co.* v. *Dickson*, 138 *Ga.* 371; *Darden* v. *Washington*, 35 *Ga. App.* 777 (5) (134 S. E. 813), and cit.

9. "The question of damages being one for the jury, the court should not interfere, unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias." Civil Code (1910), § 4399. Cases of personal injuries and the like are interfered with by this court only when the verdicts are exorbitant or very inadequate. *Central Ry. Co.* v. *Perkerson*, 112 *Ga.* 923, 933 (38 S. E. 365, 53 L. R. A. 210) ; *Central Ry. Co.* v. *Minor*, 2 *Ga. App.* 804, 806 (59 S. E. 81) ; *S. A.-L. Ry. Co.* v. *Bishop*, 132 *Ga.* 71 (63 S. E. 1103). Excessive damages are such as shock the moral sense to such an extent as to lead to the belief that the jury were actuated by undue or improper motives or influences. *Central R. Co.* v. *DeBray*, 71 *Ga.* 406, 422. The approval of the verdict by the trial judge is given great weight by this court in passing upon the excessiveness of a verdict. *Holland* v. *Williams*, 3 *Ga. App.* 636 (60 S. E. 331). That a verdict is generous is not a reason for setting it aside. *Bullard* v. *Rolader*, 26 *Ga. App.* 742 (107 S. E. 548) ; *City of East Point* v. *Hendrix*, 27 *Ga. App.* 485 (108 S. E. 623). A verdict will not be disturbed by this court merely because it is a large one. *S. A.-L. Ry. Co.* v. *Vaughn*, 19 *Ga. App.* 397 (91 S. E. 516).

(*b*) While a verdict for $10,000 in this case might seem to be a generous one, it is not necessarily an excessive one. If the jury believed the testimony of the plaintiff and her witnesses, including that of her medical attendant (and by their verdict it is evident that they did), the plaintiff's physical condition was greatly impaired by reason of the alleged injury, and she suffered considerably as a result thereof and will continue so to do. Therefore this court, not having the discretion of a trial court in setting aside verdicts and granting new trials, will not interfere with the verdict in this

case, under the provisions of section 4399 of the Civil Code. See Civil Code (1910), §§ 6082-6088; *Holland* v. *Williams*, 3 *Ga. App.* 636, 637 (60 S. E. 331).

8. The evidence authorized a verdict in the plaintiff's favor; and, there being no error of law committed necessitating the grant of a new trial, this court will not interfere with the judgment of the trial judge overruling the defendant's motion for a new trial.

*Judgment affirmed. Jenkins, P. J., concurs. Stephens, J., dissents.*

STEPHENS, J., dissenting. Plaintiff sues to recover damages for alleged severe nervous shock caused from her having become frightened at the animal and having fallen and become injured in efforts to escape from it while it was pursuing her. There is evidence that, after the plaintiff's alleged experience with the animal which was in August, 1931, notwithstanding she went to bed, she drove her automobile and went to the defendant's house, that she was in bed at intervals, but pursued her duties as a school-teacher, that she lost one day prior to the Christmas holidays, and that was immediately following the attack by the monkey, that from September, 1931, until September, 1932, she lost only thirteen days, that in October, 1932, she was in bed over four weeks suffering with nervousness and pains in her head, that she was not treated by a physician until April, 1932, that the physician who treated her testified that if her nervous condition had been caused by heavy work and on account of her age and her physical makeup, and if she was in good condition, he would not think the fright caused her nervous condition, that after 1932 the plaintiff's nervous condition became worse. The entire evidence was sufficient to authorize an inference that the plaintiff's nervous condition was not caused entirely by her experience with the animal. The allegations in the petition that the plaintiff's nervous condition was caused from her experience with the animal, and the denial of this allegation by the defendant in the plea, and the evidence, made an issue under the pleadings and the evidence for the jury as to whether the plaintiff's condition was caused entirely or in part from her experience with the animal as alleged.

The court charged the jury generally that the burden was on the plaintiff to prove the allegations of the petition by a preponderance of the evidence. The only charge relative to damages was as fol-

lows: "If you believe plaintiff is entitled to recover, and you believe she suffered pain, and permanent resulting injuries, she would be entitled to recover on this specification of damages. As to the amount of damages, the law declares there is no standard by which it can be measured except the enlightened consciences of impartial jurors. You would determine this from the evidence and see what sort of injuries she received; their character as to producing or not producing pain, whether they have ceased, or whether they will continue in the future, and then desiring to be fair and just to both parties, if the plaintiff is entitled to recover you would award her on this classification of damage such sum as you believe would be fair compensation for her pain and suffering, such sum as would receive the approval of your enlightened consciences."

The defendant duly made the written requests to charge as follows, and to the refusal of the requests he excepts: "If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrong-doer (section 4509)." "If you believe from the evidence that subsequent to the date of the alleged tort the plaintiff suffered an illness or a nervous breakdown, as claimed, before you would be authorized to allow damages on account of this subsequent condition, you must believe by a preponderance of the evidence that this physical condition was a result, directly or consequently, of the tortious act complained of." "I charge you that if the plaintiff, subsequent to the date of the alleged tortious act, suffered an illness or physical impairment, and you believe from the evidence that this condition resulted from causes not attributable to or connected with the alleged tort, you would not be authorized to allow any damages on account of this subsequent condition." "In determining whether the damages claimed from a subsequent illness can be traced to a prior injury, you would have the right to consider the length of time between a former injury and the subsequent illness; also you may consider the fact that such subsequent illness was the result of other causes, and if in your opinion such damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances largely preponderate in causing the injurious effect, such damages are too remote to be the basis of a recovery." "Before the plaintiff can

recover damages for physical injuries, you must find from the evidence that the proximate cause of such injuries was the negligent act of defendant. By proximate cause is meant the direct and natural result of an act done and that there is no other culpable and efficient agency or act intervening between the defendant's act and the plaintiff's injury." "Damages traceable in some measure to a tortious act, but resulting chiefly from other and contingent circumstances and not the legal or natural consequences of the act, may be too remote to be the basis of a recovery against the wrong-doer."

The above requests, while some of them are more or less duplications of one another, were pertinent to the issues made by the pleadings and the evidence and were not covered by the general charge. The defendant was entitled to have the issue as to whether the plaintiff's injuries were caused from her alleged experience with the animal, or from other causes, specifically submitted to the jury. The defendant invoked such specific charge in the written requests to charge which were refused. The court should have charged the law as embodied in these requests. In my opinion the court's failure to charge as requested was error demanding the grant of a new trial to the defendant. Civil Code (1910), § 4509. See *Central of Georgia Railway Co.* v. *White,* 135 *Ga.* 524 (3) (69 S. E. 818).

I concur in the other rulings, but not in all that is said in the opinion. I dissent from the judgment of affirmance.