## A03A1506. HARPER v. ROBINSON et al.
### (589 SE2d 295)

ADAMS, Judge.

Charles W. Robinson and Kristie Robinson filed a wrongful death action against Philip Harper III in connection with the death of their daughter, Cora Le Robinson. Harper appeals from the trial court's denial of his motion for summary judgment. We reverse.

In November or December 2000, Charles Robinson became aware of an animal, named Natsayia, belonging to Steve Cole. Cole was looking for a home for Natsayia. Robinson understood that Natsayia had been "bred as a wolf" or "was a wolf," and he believed that his brother, Matthew Robinson, would be interested in the animal, so Charles brought the dog to Matthew. A few weeks later, Matthew and Natsayia moved in with Philip Harper. On January 19, 2001, Charles and Kristie Robinson, along with their infant daughter, Cora Le, were visiting in Harper's home. During the visit, Cora Le was placed on a bed to sleep. A few minutes later, Natsayia picked the infant up in her mouth and carried the child into the kitchen, resulting in the child's death.

The wrongful death complaint filed by Charles and Kristie Robinson asserted claims of negligence, strict liability, liability under OCGA § 51-2-7 and premises liability under OCGA § 51-3-2 (b). Harper moved for summary judgment on these claims. The trial court granted summary judgment as to the Robinsons' negligence claim, but denied the motion as to the remaining claims.

1. Harper first contends that the trial court erred in denying summary judgment as to the Robinsons' strict liability claim. The trial court relied upon *Candler v. Smith*, 50 Ga. App. 667 (179 SE 395) (1935), in holding that a strict liability claim can exist against an animal that is ferae naturae[1] under Georgia law and that an issue of fact existed as to whether Natsayia should be considered ferae naturae. Harper asserts that this was error, however, because he presented uncontradicted evidence establishing that Natsayia was a dog, and thus not ferae naturae.

The *Candler* case held that when a person is injured by an animal ferae naturae, such as a lion, tiger, bear, or ape, the owner's negligence is presumed. Id. at 670 (2). And the owner or keeper of such wild animals is required "to exercise that degree of care in regard to them which will absolutely prevent the occurrence of an injury to others. . . ." Id. Thus, the *Candler* court held "the occurrence of the act producing the injury affords sufficient evidence that the owner or keeper has not exercised the degree of care required of

---

[1] An animal that is ferae naturae is "of a wild nature or disposition." *Turner v. Irvin*, 146 Ga. App. 218, 219 (246 SE2d 127) (1978) (Deen, P. J., concurring specially).

him." Id. Under Georgia law, a dog is not considered ferae naturae, but rather is a domestic animal, and thus not subject to the holding in *Candler*. See *Turner v. Irvin*, 146 Ga. App. 218, 219 (246 SE2d 127) (1978) (Deen, P. J., concurring specially).

In support of his motion for summary judgment, Harper presented affidavit testimony from Steve Cole stating that Natsayia had been given to him by Wendy Davis. Davis, in turn, signed an affidavit stating that in 1998, she owned a female Malamute/Huskey dog named "Asia," and a male German Shepherd/Malamute dog named "Harley." Davis stated that these two dogs mated in 1998, resulting in a litter of three puppies. She said that she gave one of these puppies to Cole, and that puppy was the only dog she had ever given him.

In response, the Robinsons submitted Charles Robinson's affidavit stating that Cole's son had told him that Natsayia is a wolf and that the animal was bred as a wolf. But that statement is hearsay and has no probative value; thus, it cannot be considered on motion for summary judgment. *Erickson v. Hodges*, 257 Ga. App. 144, 146 (570 SE2d 420) (2002). Robinson also stated that his own observations "establish" that Natsayia is a wolf. He stated that he had known people who own wolves and that Natsayia "looks like a wolf, walks like a wolf and howls like a wolf."

We find that this evidence was insufficient to raise a jury issue as to whether Natsayia was ferae naturae, and therefore, Harper is entitled to summary judgment on the Robinsons' claim of strict liability. Harper presented evidence of Natsayia's direct pedigree as a dog. In the face of this evidence, the Robinsons were required to proffer more than a subjective belief that Natsayia exhibited wolf-like behaviors in order to create a jury issue as to Natsayia's parentage. On summary judgment, "an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility." (Citation and punctuation omitted.) *Heinsimer v. Wellington Leisure Products*, 231 Ga. App. 579, 582 (1) (500 SE2d 7) (1998).

2. Harper also contends that the trial judge erred in failing to grant his motion for summary judgment on the Robinsons' claim under OCGA § 51-2-7. That statute provides, in pertinent part, that "[a] person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured." OCGA § 51-2-7.

"In order to support an action for damages under this statute, it must be shown that the dog was vicious or dangerous and that the owner knew it. The dog's nature and the owner's knowledge are two

separate issues, and proof of both is necessary for recovery." (Citations omitted.) *Clark v. Joiner*, 242 Ga. App. 421, 422 (530 SE2d 45) (2000). And the Robinsons must show that Harper had knowledge that Natsayia had the propensity to do the particular act which caused the injury in this case. *Wade v. American Nat. Ins. Co.*, 246 Ga. App. 458, 459 (1) (540 SE2d 671) (2000).

The Robinsons contend that Harper had knowledge of Natsayia's dangerous propensities because he took precautions to keep her separated from his own two, much smaller dogs. In addition, they note that he created a rule that Natsayia could not be in the house unless Matthew Robinson stayed with her. The Robinsons assert that these actions by Harper create a jury issue as to whether he was aware of Natsayia's dangerous propensities.

But there is no evidence that Natsayia had ever attacked or bitten a human. Although there was some hearsay evidence that the dog had "gotten after cats" when she lived with Steve Cole, there was no admissible evidence that she had ever attacked or bitten any animal. Moreover, under Georgia law, a dog's attack on another animal is insufficient to put an owner on notice that his dog has a propensity to bite or attack a human being. *Hamilton v. Walker*, 235 Ga. App. 635, 636 (510 SE2d 120) (1998).

In addition, the evidence showed that Harper established the rule that the dog should stay outside unless accompanied by Matthew as a result of her destruction of property, not due to any threat she posed to animals or humans. Earlier, Matthew had left the dog alone in Harper's house, and she had destroyed window blinds and ripped holes in the carpet. Further, Harper's testimony was that his concern in keeping Natsayia away from his dogs was her relative size and her tendency to behave in a dominating manner. He testified that he thought that Natsayia did not intend to scare his dogs; she was just large and rambunctious.

Thus, we find that there was no evidence to create a jury issue that Natsayia had a propensity to harm people or that Harper was on notice of such a propensity. Accordingly, the trial court erred in denying summary judgment on the Robinsons' claim under OCGA § 51-2-7.

3. Similarly, we find that the trial court erred in denying summary judgment on the Robinsons' claim of premises liability. In order to establish a cause of action under the premises liability statute, OCGA § 51-3-1, the Robinsons were required to produce evidence of Natsayia's vicious propensities in order to show that Harper had superior knowledge of a danger presented by the dog. *Osowski v. Smith*, 262 Ga. App. 538, 539-541 (1) (586 SE2d 71) (2003); *Webb v. Danforth*, 234 Ga. App. 211, 212 (505 SE2d 860) (1998). We have already found in Division 2 that the Robinsons failed to present evidence that Natsayia had demonstrated such dangerous propensities. Moreover, the

evidence showed Charles Robinson was at least as familiar as Harper with Natsayia's history as he had acquired the dog for Matthew Robinson. Thus, the Robinsons could not establish that Harper possessed superior knowledge as required under OCGA § 51-3-1.

4. The Robinsons argue, however, that Harper should be liable because he has admitted his own culpability in connection with Cora Le's death. Harper testified that he felt responsible because he had implemented certain procedures with regard to Natsayia, but had neglected to follow through on them. In particular, he established the rule that Matthew should stay with the dog at all times when she was in the house, but he did not pay attention to Matthew's actions or whereabouts on the day of the child's death.

Thus, the Robinsons ask us to hold Harper liable, even in the absence of any legal liability, because he feels responsible for the child's tragic death. "There is no authority for this position. An admission of liability has efficacy only if there is liability. If there is none, then the statements of the alleged tort-feasor constitute merely expressions of sympathy, benevolence, or an acceptance of *moral* responsibility." (Citation and punctuation omitted; emphasis in original.) *Widner v. Brookins, Inc.*, 236 Ga. App. 563, 565 (3) (512 SE2d 405) (1999).

*Judgment reversed. Andrews, P. J., concurs. Barnes, J., concurs in judgment only.*

DECIDED OCTOBER 22, 2003 —

*Gray, Hedrick & Edenfield, Lloyd B. Hedrick, Jr.*, for appellant.
*Miller, Cowart, Cates & Howe, Wallace Miller III, Joel A. Howe*, for appellees.