## A05A1394. ARNSDORFF v. FORTNER.

(622 SE2d 395)

MIKELL, Judge.

In this personal injury action arising out of an automobile collision between Cecil Fortner and Alan Lee Arnsdorff, a Bryan County jury awarded Fortner $7,000,000 in damages. On appeal, Arnsdorff argues that the trial court erred in denying his motion for new trial, refusing to allow cross-examination concerning collateral source benefits, allowing the introduction of incomplete medical bills, and overruling his motion for a mistrial. We affirm.

The record shows that at approximately 9:00 p.m. on September 2, 2003, Arnsdorff's and Fortner's vehicles collided, after Arnsdorff failed to obey a stop sign before making a left turn. Senior trooper Lisa Bowen of the Georgia State Patrol investigated the accident. Bowen testified that Arnsdorff was legally intoxicated when the accident occurred. Arnsdorff was criminally charged in connection with the accident and pled guilty to DUI, failure to yield, and four counts of serious injury by accident, which facts were stipulated at trial. As a result of the collision, Fortner sustained serious injuries and required hospitalization from September 2 through December 29, 2003.

Fortner was transferred to Memorial Hospital in Savannah by ambulance after the hospital to which he was initially taken intubated him and determined that his injuries were so serious that they could not adequately treat him at their facility. Dr. William Bromberg, a general surgeon and trauma critical care physician at Memorial, testified by deposition that Fortner presented with an interior

abdominal wall hemorrhage; that he had suffered respiratory distress rendering him incapable of breathing on his own, which was the reason he had been intubated at the first hospital; that Fortner's abdominal bleeding was a life-threatening condition and required surgery; that Fortner's surgical site became infected, causing him to develop sepsis; that the sepsis led to further lung injury and acute respiratory distress syndrome; and that a second surgery was performed to clean out the infected surgical site. Dr. Bromberg further testified that after the second surgery, Fortner's condition slowly improved, but fluid and blood continued to collect around his right lung, which also developed into a life-threatening condition; that a cardiothoracic surgeon performed Fortner's third surgery, a thoracotomy, which required that the surgeon expose Fortner's lung to extract any retained, clotted blood and fluid from it; that Fortner remained critically ill for about a month; and that Fortner remained ventilated for several weeks and required chemical paralysis to ensure adequate ventilation, which was achieved through administering pain and sedative medication to paralyze him intermittently. Tubes remained in Fortner's chest cavity after the surgery to continue to drain the fluid.

Dr. Bromberg identified photographs of both surgical sites and explained that the wounds could not be closed due to infection. Dr. Bromberg recalled that Fortner suffered renal failure due to his severe infection and required dialysis; that he underwent daily wound dressing changes to heal his wounds; that he started to improve after doctors performed a tracheostomy and weaned him from the ventilator; that Fortner underwent rehabilitative and physical therapy, which was very difficult for him; and that doctors later found that Fortner had sustained a shoulder injury, which was not life-threatening but ultimately also required surgery.

Dr. Bromberg opined that Fortner would likely need another surgery to repair the hernia that resulted from the abdominal surgeries, that the surgery would require a five to seven day hospital stay, but that he would not perform it until the thoracotomy wound had healed completely. During that surgery, Dr. Bromberg explained that he would insert mesh into Fortner's abdomen as a substitute for the tissue that had not healed properly. Dr. Bromberg further opined that Fortner would fully recover from the injuries to his abdomen and lungs and sepsis within six to twelve months. On cross-examination, Dr. Bromberg testified that Fortner was morbidly obese and suffered from diabetes and hypertension before the accident. When asked if these diseases contributed to Fortner's condition, Dr. Bromberg explained that the hypertension did not but diabetes often increased the risk of infection and could lead to renal failure.

Dr. Mark Jenkins, the orthopedic surgeon who operated on Fortner's shoulder, testified that he first saw Fortner on January 22, 2004, for complaints of a limited range of motion in his right shoulder; that he determined from an x-ray that some of Fortner's deltoid muscle had turned into bone, rendering him unable to move his shoulder; that the injury was caused by the accident; and that he performed two surgeries on Fortner's shoulder, one to remove the excess bone and the other to clean the wound. Dr. Jenkins opined that Fortner would need physical therapy for an additional three months to a year and that he did not expect him to ever regain full range of motion in his shoulder or use of his right hand. Dr. Jenkins expected that Fortner would regain enough function to complete activities of daily living. However, Fortner's physical ability would be limited for the remainder of his life, necessitating a change in Fortner's line of work to work that required, at most, medium to light labor. Dr. Jenkins testified that he had not fully assessed the level of impairment to Fortner's right arm because he was still in treatment. He believed that he could improve Fortner's range of motion a little more by manipulating Fortner's arm but that to do so would result in further damage to Fortner's muscle tissue.

Fortner's wife, Angela, testified that when Fortner left the hospital, he continued his rehabilitation at his parents' home for several months because his own home could not accommodate his wheelchair. Further, at the time of trial, Fortner was still undergoing rehabilitative therapy, was depressed, and had not resumed normal activity around the house. Fortner's mother testified that when Fortner lived with them, she changed his wound dressings daily, that she and her husband administered Fortner's antibiotics intravenously; that Fortner was in a lot of pain; that she would rub his hands and feet at night because he could not sleep due to the pain; that he had intermittent diarrhea and constipation; that he needed assistance to use the bathroom and had a bath chair; that he could not walk initially but progressed to the use of a cane by the end of March when he left their home; and that he was very strong before the accident.

At the time of the accident, Fortner was 47 years old and had been an independent truck driver for 14 years. His gross weekly earnings were approximately $1,700 to $1,900. His 1099 form for 2003 reflected gross earnings of $47,318.11. Fortner testified that he could no longer climb into his truck or shift its gears; that he could not resume his prior line of work; and that he had no training for any other type of work.

The case proceeded to trial on damages. Neither party requested a special verdict form. The jury returned a verdict of $7,000,000 for Fortner and concluded that punitive damages were not appropriate.

4

1. Arnsdorff argues that the trial court should have granted his motion for new trial on the following three grounds: (1) the verdict was excessive; (2) the trial should have been stayed pending the outcome of a declaratory judgment action; and (3) one of the jurors failed to disclose prejudicial information during voir dire. As long as there is some evidence to support the verdict, we will not disturb the denial of a defendant's motion for new trial.[1]

(a) Pursuant to OCGA § 51-12-12 (a), "[t]he question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." It is well settled that

> [b]efore [a] verdict will be set aside on the ground that it is excessive, where there is no direct proof of prejudice or bias, the amount thereof, when considered in connection with all the facts, must shock the moral sense, appear "exorbitant," "flagrantly outrageous" and "extravagant." It must be monstrous indeed and such as all mankind must be ready to exclaim against at first blush. It must carry its death warrant upon its face.[2]

Additionally,

> an excessive or inadequate verdict is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge who, like the jury, saw the witnesses and heard the testimony. In fact, the trial court's approval of the verdict creates a presumption of correctness which is not to be disturbed absent compelling evidence. . . . Our role is not to enter the jury box. The jury made its award in its enlightened conscience and based upon the evidence agreed to by all concerned.[3]

Finally, the defendant carries the heavy appellate burden of establishing the excessiveness of a verdict pursuant to OCGA § 51-12-12.[4]

---

[1] *Habel v. Tavormina*, 266 Ga. App. 613, 618 (3) (597 SE2d 645) (2004).

[2] (Citations and punctuation omitted.) *Smith v. Crump*, 223 Ga. App. 52, 57 (2) (476 SE2d 817) (1996), citing *Seaboard System R. v. Taylor*, 176 Ga. App. 847, 849 (2) (338 SE2d 23) (1985); *CSX Transp. v. Darling*, 189 Ga. App. 719, 721 (1) (377 SE2d 217) (1988); *Candler v. Smith*, 50 Ga. App. 667, 677 (9) (179 SE 395) (1935); *Realty Bond & Mtg. Co. v. Harley*, 19 Ga. App. 186, 187-188 (2) (91 SE 254) (1917).

[3] (Citation omitted.) *Alternative Health Care Systems v. McCown*, 237 Ga. App. 355, 362 (7) (514 SE2d 691) (1999).

[4] Id. at 361-362 (7).

During closing argument, Fortner's attorneys focused on Fortner's pain and suffering. One attorney argued that Fortner should be awarded ten to fifteen million dollars to compensate him for what he had experienced and the other specifically asked for almost seven million dollars for pain and suffering. "[A]ppellate courts should be hesitant to second-guess verdicts where the damage award is based in any significant part on pain and suffering. This duty becomes most onerous when the jury is not required to render a special verdict as to damages."[5] As noted above, appellant did not submit a special verdict form for the jury's consideration.

In addition to the detailed medical testimony offered to chronicle Fortner's experience, Fortner also testified about his injuries. He testified that this was the first time he had been in the hospital and that the experience was the worst of his life; that for two weeks during his paralysis, he could hear what people said to him but could not move or talk; that he was in pain all of the time and that it was sometimes so severe that he was scared to close his eyes for fear of not waking up again; that he could not sleep through the night because of the pain; that walking was difficult; that his balance was not good; that he wore a brace on his right foot; and that his legs and feet always felt like they were on fire.

Georgia law is clear that "pain and suffering in the past, present, and future are measured by the enlightened conscience of a fair and impartial jury. There exists no rule or yardstick against which damages for pain and suffering are to be measured."[6] Based on the evidence, the amount of the jury's award is not so flagrant as to shock the conscience. Accordingly, as the trial court declined to disturb the jury's verdict, we likewise decline to find error.[7]

(b) Arnsdorff also argues that the trial court should have granted Auto-Owners Insurance Company's motion to stay the action pending the outcome of its petition for declaratory judgment. The trial judge did not rule on the motion to stay, and there is no evidence that counsel for Auto-Owners, one of Arnsdorff's insurers, or the appellant

---

[5] (Citation omitted.) Id. at 362 (7). Accord *Beam v. Kingsley*, 255 Ga. App. 715, 716 (1) (566 SE2d 437) (2002).

[6] *Smith*, supra at 57 (2).

[7] See id. (verdict of $1,000,000 not excessive for injuries received in an automobile collision where plaintiff earned $4.25/hour, could not return to work, and incurred over $36,000 in medical expenses); *Whitley v. Ditta*, 209 Ga. App. 553 (434 SE2d 108) (1993) (award of $200,000 for pain and suffering in a personal injury action resulting from an automobile collision was not excessive where plaintiff incurred $9,689 in medical expenses and suffered a permanent scar). Cf. *Norfolk Southern R. Co. v. Blackmon*, 262 Ga. App. 266, 268 (585 SE2d 194) (2003) ($5,000,000 verdict excessive where amount based on jury's desire to punish defendant and jury awarded substantially more than the plaintiff requested even though it found the plaintiff was 50 percent negligent).

requested a final ruling on this issue prior to trial. Accordingly, this error presents nothing for review.[8]

(c) Finally, Arnsdorff maintains that his motion for new trial should have been granted because one of the jurors failed to disclose that he was the brother-in-law of a plaintiff in an unrelated personal injury car accident case who was awarded $1,800,000 in damages.

We need not address the merits of this argument as there is no evidence in the record to support the facts asserted. As an appellate court, we do not consider factual assertions that are made in appellate briefs but are not established in the record, as briefs cannot be used to add evidence to the record.[9] Consequently, this error fails.

2. Arnsdorff contends that the trial court's refusal to allow cross-examination concerning collateral source benefits was erroneous. "Decisions regarding the admissibility of evidence and the scope of cross-examination fall within the trial court's discretion. Such decisions will not be reversed absent a clear abuse of discretion."[10] We find no such abuse here.

Arnsdorff filed a motion in limine which, among other things, sought to exclude any reference to Fortner having to pay medical bills or his inability to pay those bills. The trial court granted the motion. During Fortner's direct examination, the following colloquy occurred: "Q. And as far as working for Hudd did they provide you any benefits? A. There are no benefits no, sir. Q. You're on your own? A. You're on your own." Arnsdorff objected, arguing that Fortner opened the door to questioning about collateral sources, and the trial court refused to allow Arnsdorff to discuss collateral sources.

Arnsdorff maintains that the trial court's refusal to allow cross-examination on collateral sources was erroneous and prejudiced his case. Specifically, he claims that he should have been allowed to question Fortner about the fact that Medicaid paid some of his bills. However, as acknowledged by Arnsdorff in his brief, the medical bills submitted as a part of Exhibit 21 indicated that Medicaid paid portions of Fortner's bills. "Harm as well as error must be shown to warrant a reversal."[11] As the collateral source evidence that Arnsdorff sought to introduce was cumulative of that admitted through Fortner's medical bills, we find no harm.

3. Next, Arnsdorff argues that the trial court erred by allowing Fortner to introduce into evidence incomplete medical bills and summaries thereof. Fortner offered his medical bills into evidence as

---

[8] See *State Highway Bd. v. Warthen*, 54 Ga. App. 759, 763 (189 SE 76) (1936).

[9] See *Dodson v. Dean*, 256 Ga. App. 4, 5, n. 1 (567 SE2d 348) (2002).

[10] (Footnote omitted.) *Eubanks v. Waldron*, 263 Ga. App. 75 (587 SE2d 253) (2003).

[11] *Joiner v. Lane*, 235 Ga. App. 121, 125 (3) (a) (508 SE2d 203) (1998).

Exhibit 21. Arnsdorff objected on the grounds that the document purporting to be the hospital bill, the first 217 pages of the exhibit, was actually a summary and was incomplete. The trial court admitted the documents over Arnsdorff's objection but informed Arnsdorff that he could cross-examine Fortner as to inconsistencies or errors in the bills.

Exhibit 21 contains a 217-page summary of treatment that Fortner received during his hospital stay, but on the last page of the summary, the word "continued" appears at the bottom. The next page of Exhibit 21, however, is a bill from the hospital to Fortner reflecting a total balance of $779,682.70. Fortner testified that he received the bill after he was discharged from the hospital, that the expenses were incurred due to his hospitalization, and that the bill was correct. On cross-examination, Arnsdorff did not question Fortner about the alleged errors in the bill.

Arnsdorff relies on *Hossain v. Nelson*[12] for the proposition that the introduction of the summary of the bills constituted reversible error. In *Hossain,* we concluded that a medical bill summary was inadmissible where the plaintiff did not lay the proper foundation for its introduction because he testified that he could not compile the totals or substantiate the various subtotals.[13] In this case, unlike *Hossain,* Fortner testified as to the amount of the hospital bill, that the amount of the expenses as reflected on the hospital bill received after his discharge was correct and that the expenses were incurred in connection with this hospitalization that resulted from the accident. Additionally, Arnsdorff was not denied the opportunity to cross-examine Fortner as to his amount of medical expenses. Accordingly, we find no error.[14]

4. In his last enumeration of error, Arnsdorff contends the trial court committed reversible error when it denied his motion for a mistrial after Fortner testified about medical matters in violation of the trial court's order on Arnsdorff's motion in limine. We disagree.

The order granting Arnsdorff's motion precluded testimony referencing conversations between Fortner and his treating physicians. This enumeration of error is based on the following colloquy: "Q. Why was it you were having difficulty walking and why are you having

[12] 234 Ga. App. 792 (507 SE2d 243) (1998).
[13] Id. at 794 (4).
[14] See *Piggly-Wiggly Southern v. Tucker,* 139 Ga. App. 873, 876-877 (4) (229 SE2d 804) (1976) (cancelled checks properly admitted as only evidence of medical expenses incurred where plaintiff's daughter testified that checks were based on medical bills received). See also *Glennville Wood Preserving Co. v. Riddlespur,* 156 Ga. App. 578, 581 (4) (276 SE2d 248) (1980), overruled on other grounds, *Centennial Ins. Co. v. Sandner,* 259 Ga. 317, 318 (1) (380 SE2d 704) (1989) (only evidence of medical expenses was plaintiff's testimony as to amount, the nature of her injuries, treatment, and hospitalization).

difficulty walking today? A. They said that I got a nerve damage [sic], and they said it's because. . . ." Arnsdorff objected on the ground that the testimony violated the in limine order, Fortner's counsel withdrew the question, and the objection was sustained. The order granting Arnsdorff's motion in limine did exclude the testimony at issue. But to warrant reversal on this ground, Arnsdorff must also show that the violation of the order caused him harm.[15]

Arnsdorff argues that he was harmed because there was no medical evidence offered in support of Fortner's testimony, and therefore, the jury could have concluded that Fortner suffered permanent nerve damage. If the only evidence of injury in this case pertained to Fortner's foot, we might be inclined to conclude that this testimony harmed Arnsdorff's case. However, in light of the plethora of evidence concerning Fortner's life-threatening injuries, his debilitated state, and his lengthy rehabilitation process, we cannot find harm. Additionally, there was other evidence in the record to which Arnsdorff did not object that Fortner sustained an injury to his foot. Fortner testified that he had "drop" foot, which required that he wear a brace and that he did not know how long he would have to wear the brace. Fortner's orthopedic surgeon testified that Fortner told him that his foot was bothering him but opined that Fortner would not need surgery for the injury. Therefore, this argument lacks merit.

Arnsdorff also argues that the testimony of Carol Jones, Fortner's sister and one of his caregivers, violated the order on the motion in limine. Jones testified as to her observations of Fortner's course of treatment during his hospitalization. "One who complains that the opposing party violated a court's order on a motion in limine must show that the court ruled so as to limit the evidence in the particulars claimed."[16] The order granting Arnsdorff's motion precluded testimony referencing conversations between Fortner and his treating physicians. Therefore, the order did not apply to Jones's testimony. Furthermore, Arnsdorff points to no evidence in the record that he moved for a mistrial related to Jones's testimony. Accordingly, this argument fails as well.

*Judgment affirmed. Phipps, J., concurs. Andrews, P. J., concurs in judgment only.*

DECIDED OCTOBER 18, 2005 — CERT. APPLIED FOR.

---

[15] See *Jordan v. Johnson*, 223 Ga. App. 875, 876 (479 SE2d 175) (1996).
[16] (Citations omitted.) Id.

*Brennan, Harris & Rominger, Thomas L. Bass, Jr., R. Stephen Sims*, for appellant.
*Savage & Turner, Robert B. Turner*, for appellee.