### 51164. MILLER v. TUTEN.

MARSHALL, Judge.

Appellee, the administrator of his deceased brother's estate, brought a wrongful death action against the appellant for the latter's negligence in the operation of a motor vehicle causing the death of appellee's decedent. Appellant admitted liability for the homicide in open

court, so the only issue before the jury was determination of the "full value of the life of the decedent."[1]

In proving the "full value of the life of the decedent" the appellee offered the following evidence: that decedent was a 73-year-old farmer who grew tobacco on rented farm land and who split the proceeds from the sale of the tobacco "50-50" with his brother, appellee, with whom he lived and worked; that over the past five years the gross receipts from the sale of tobacco averaged roughly $5,000 per year (making decedent's share $2,500); that one year decedent grew his own corn crop for which he received $776.20; that decedent's brother paid decedent $340 one year for helping him farm other lands; that decedent received annual social security payments of $912 and "old age pension" or "welfare" of $504 per year; that decedent was in good health had no bad habits and was a steady worker. No evidence was introduced showing the expenses of production of the tobacco or corn crop other than decedent's share of the farm rental, which was $850 per year. Appellant objected to the admission of the tobacco sales receipts but the objection was overruled. The decedent had filed no income tax returns for the past several years.

The jury returned a verdict for appellee in the amount of $45,000 and judgment was entered thereon. Appellant contends that the verdict was excessive and that the trial court's admission of the tobacco sales receipts and its charge to the jury, which allowed the gross receipts to be considered, were the cause of the transgression. He contends that the gross sums received from sales of tobacco and corn crops should have been reduced by the expenses of production, to wit; rent, cost of

---

[1]Ga. L. 1924, p. 60 (Code Ann. § 105-1309), which allows an administrator to sue and recover for the benefit of the next of kin where decedent is not survived by a wife or children, was amended in 1969 (Ga. L. 1969, p. 762) to eliminate the requirement of dependency both as to the right of recovery and the amount of recovery. Under the amended Code the amount of recovery is the "full value of the life of the decedent."

plants and fertilizer, cost of outside labor in harvesting, and machinery rental, in order to determine the earnings of the decedent from farming in order to determine the full value of the decedent's life. *Held:*

1. Code § 105-1308 defines the "full value of the life of the decedent," as "the full value of the life of the decedent without deduction for necessary or other personal expenses of the decedent had he lived." Needless to say, such a definition provides poor definitive guidelines. The appellate courts have provided some guidance. The case most frequently cited as giving meaning to the phrase is *Pollard v. Boatwright,* 57 Ga. App. 565, 568 (196 SE 215), in which this court said: "The term 'full value of the life of the deceased,' is construed to mean the gross sum that the deceased would have earned to the end of his life, had he not been killed, reduced to its present cash value . . . In arriving at the amount of damages the jury should consider the age of the deceased at the time of his death, his health, his habits, the amount of money he was earning, his expectation of life, the probable loss of employment, voluntary abstinence from work, dullness in business, reduction of wages, increasing infirmities of age, with a corresponding diminution of earning capacity, and other causes which may contribute to illustration of the gross earnings of a lifetime."

In cases that followed *Pollard,* the terms "gross sum," "earnings," "income," "wages," and "salary" have all been mentioned with approbation as a proper element of the recovery. See, e.g., *Kerr v. Mims,* 130 Ga. App. 54 (202 SE2d 244) ("earnings"); *Isom v. Schettino,* 129 Ga. App. 73, 78 (199 SE2d 89) ("earnings"); *Hospital Authority &c. v. Adams,* 110 Ga. App. 848, 853-4 (140 SE2d 139) ("salary and bonuses"); *Long v. Serritt,* 102 Ga. App. 550 (4) (117 SE2d 216) ("wages"); *Atlanta, B. & C. R. Co. v. Thomas,* 64 Ga. App. 253 (7) (12 SE2d 494) ("average yearly earnings"). In all of these cases, the "earnings" of the decedent were in the form of a salary or wages or other net form of earnings which were to accrue to decedent in the future.

We believe the reasonable interpretation of the statutory phrase, "full value of the life" was to allow as an element of the recovery only the loss of a decedent's future

net earnings — that is, his gross receipts reduced by his business expenses. To admit evidence that shows only the gross receipts certainly results in a distortion of the real earnings of the decedent as demonstrated by the present case. Here, the evidence showed that decedent would have received annually over the next 10.15 years of his life (his life expectancy under the mortality table admitted into evidence) $2,500 from sale of tobacco, $760 from sale of corn, $340 for personal labor, $912 for social security and $504 for old age pension; a total of $5,016 annual income. Reduced to present value under a 5% interest rate (Code Ann. § 38-217) the factor applied is 7.8094, resulting in a total accumulation of approximately $40,000. When the funeral and other expenses are added to that figure, the total "value of the life" closely approximates the amount awarded by the jury. It is obvious that the jury did not deduct the cost of production of the crops in arriving at the verdict. It is common knowledge that crop production requires certain expenditures as admitted by appellee. Indeed, it is not uncommon for some farmers to operate at net losses for certain years.

The jury's mistake can only be attributed to the fact that no figures were available to it as to what the decedent's farming expenditures might have been. It is incumbent on the appellee, if he intended to rely on the gross sales receipts as proof of the earnings of decedent, that he also prove what amounts were expended in connection therewith. Otherwise, the gross receipts were meaningless and should not have been admitted.

2. We find no error in the admission into evidence of the amounts of social security and old age or welfare pension received by decedent. "In the comparatively few cases in which the matter has been directly presented, the courts have uniformly held that the decedent's income from a pension, retirement plan payments, social security benefits, and other receipts of like nature, were to be considered, along with other relevant factors, in substantially the same manner as actual earnings in the calculation of pecuniary loss for the purpose of determining the recovery." 81 ALR2d 949, 950. See also, *Kerr v. Mims,* 130 Ga. App. 54 (3), supra.

*Judgment reversed. Bell, C. J., and Webb, J., concur.*

ARGUED SEPTEMBER 17, 1975 — DECIDED JANUARY 6, 1976.

*Corish, Smith, Remler & Moore, Malberry Smith, Jr.,* for appellant.

*Hartley & McNatt, Hugh B. McNatt, Leon A. Wilson, II, Benjamin Smith, Jr.,* for appellee.