52469, 52470. PIGGLY-WIGGLY SOUTHERN, INC. v. TUCKER; and vice versa.

STOLZ, Judge.

The plaintiff brought this action for personal injuries suffered due to a slip and fall in the defendant's grocery store. It was the plaintiff's contention that she slipped on a

foreign substance negligently left on the defendant's floor.

None of the defendant's employees saw any foreign substance on which the plaintiff could have slipped. In fact, only one of the twenty-two witnesses saw such a foreign substance; the witness, Mr. Sapp, testified that approximately five minutes before the plaintiff's fall he saw a "slush" of a transparent oily substance that looked like the remains of what someone had only partially mopped.

The trial court rendered judgment on a jury verdict in the plaintiff's favor. Numerous enumerations of error have been filed by the parties.

1. Since there is no evidence that the defendant had actual knowledge of a foreign substance on the floor, it is necessary that the plaintiff establish that the defendant had constructive notice(or knowledge)of a dangerous condition. *Winn-Dixie Stores v. Hardy Inc.*, 138 Ga. App. 342 (226 SE2d 142). The defendant contends that as a matter of law the plaintiff failed to establish constructive notice.

"There are two different classes of cases which may be based on constructive knowledge. The first is that type where liability of the defendant is based on the fact that an employee of the defendant was in the immediate area of the dangerous condition and could have easily seen the substance and removed the hazard. *S. H. Kress & Co. v. Flanigan,* 103 Ga. App. 301 (119 SE2d 32); *Sharpton v. Great A. & P. Tea Co.,* 112 Ga. App. 283 (145 SE2d 101)." *Winn-Dixie Stores, Inc. v. Hardy,* supra, p. 345. However, the plaintiff's explanation of the fact that only one out of twenty-two witnesses saw the "mop slush" is based on her contention that it could not be easily seen.

"The second type of case is that based on the duty of the defendant to exercise reasonable care in inspecting and keeping the premises in safe condition. *Home Federal S. & L. Assn. v. Hulsey,* 104 Ga. App. 123 (121 SE2d 311); *Boatright v. Rich's, Inc.,* 121 Ga. App. 121, supra. To sustain plaintiff's cause of action in the latter case it is necessary that he prove 'a period of time the dangerous condition has been allowed to exist. Without such [proof] it would not be possible to determine whether the defendant had been afforded a reasonable time within

which to inspect and remove the hazard.' *Banks v. Colonial Stores, Inc.,* 117 Ga. App. 581 (161 SE2d 366)." *Winn-Dixie Stores, Inc. v. Hardy,* supra, 138 Ga. App. at 345. The evidence as to the length of time that the alleged slippery area could have existed is in conflict. The defendant's employee in charge of store safety testified that he inspected the area in question within five minutes before the plaintiff's fall. The plaintiff's evidence indicates that the slippery area was the remainder of an incomplete mopping job and that it is possible that the floor had not been mopped since the store opened on the day in question. This presented a jury question, on which it could have been found that a dangerous condition had been in existence for several hours and thus that the defendant had constructive notice.

2. The defendant also claims that the trial court committed error in failing to give three of its requested charges. The first charge states that a proprietor is not an insurer of an invitee's safety, the second that a duty to interfere to prevent injury does not arise until danger is apparent, and the third that a duty of ordinary care rests upon the defendant.

The first and third of these requested charges deal solely with the burden of ordinary care resting upon defendant, a charge which the trial court did make. It is not error for the court to refuse to give an instruction in the exact language of a party's request. *Continental Cas. Co. v. Union Camp Corp.,* 230 Ga. 8 (3) (195 SE2d 417).

The second requested charge of the defendant is an incorrect statement of the law in that it states that the duty to prevent injury does not begin until danger is "apparent." In *Nathan v. Oakland Park Supermarket, Inc.,* 126 Ga. App. 538 (191 SE2d 327), the trial court charged that a defendant was not negligent until he "comprehended" a danger, and this court held the charge to be error, since the true issue was "what should have *in the exercise of ordinary care* been comprehended..." (Emphasis original.) This court continued, "[I]t is better practice in such cases for the trial court to charge succinctly the duty resting upon the defendant toward its invitees in the economical language of Code § 105-401." 126 Ga. App. 540. The trial judge in this case did just that.

3. The defendant next objects to the admission in evidence of a hearsay statement presented on the stand by the witness Mr. Sapp. The original statement was uttered by Mr. Sapp at the scene of the fall to some unidentified ladies. The testimony as to the statement was admitted in evidence by the trial court as part of the res gestae.

There are no grounds to support the defendant's contention that a hearsay statement made by a bystander to unidentified persons can never be admitted as part of the res gestae. *Whitley v. State,* 137 Ga. App. 68 (2) (223 SE2d 17); *Durham v. State,* 129 Ga. App. 5 (4) (198 SE2d 387); *Jones v. State,* 120 Ga. App. 295 (2) (170 SE2d 305). *Collins v. S. H. Kress & Co.,* 114 Ga. App. 159 (150 SE2d 373), which is cited by the defendant in support of its contention, is not on point since it dealt with a hearsay statement made by an unidentified declarant.

4. The defendant's next enumerations of error pertain to the admission in evidence of various canceled checks and the witness Mrs. Blount's testimony regarding those checks. The checks were made payable to the order of various hospitals, drugstores, doctors, ambulance services, medical supply companies, and alleged nurses. As a foundation to the admission in evidence of the checks, the plaintiff's daughter, Mrs. Blount, testified that all of the checks were based on bills received, that she had gone through each check, and that she was familiar with the services rendered and the bills received. In addition, the record contains a large quantity of testimony by both Mrs. Blount and other witnesses concerning the serious nature of the plaintiff's injuries, the character of services rendered, and the time spent in hospitals.

It is the defendant's contention that Code Ann. § 38-706.1 (Ga. L. 1970, p. 225) prohibits the admission of the plaintiff's checks in evidence. Code Ann. § 38-706.1 was written in order to provide a simplified method whereby medical bills could be offered in evidence without testimony of the billing physician. It was not intended as the sole means of proving medical damages in personal injury suits. Code Ann. § 38-706.1 does not mention authentication of canceled checks and, as a result, canceled checks may be authenticated in the traditional manner.

Since neither the spirit nor the literal application of Code Ann. § 38-706.1 places a limitation upon the admission of canceled checks in evidence, their admission would be governed by this court's holding in *Smith v. Davis,* 121 Ga. App. 704 (5) (175 SE2d 28), wherein we said: "From an examination of the transcript it appears that the objection for the above stated reasons was directed to three exhibits only, two checks which the plaintiff signed for a total of $750 in payment of medical expenses, and another check for $500 signed by the plaintiff's father. While there is no direct testimony in the cited portion of the transcript or elsewhere that these payments were for reasonable and necessary expenses, the transcript includes testimony concerning the serious nature of the plaintiff's injuries, the character of the services rendered, the time spent in the hospital, and the fact that the payments were made in response to bills submitted for services rendered. This is sufficient under the evidence in the present case to support a permissible inference, if so determined by the jury, that the charges were reasonable, as well as necessary."

*Parham v. Roach,* 131 Ga. App. 728 (1) (206 SE2d 686) is distinguished in that the canceled checks in *Parham* appear to have been offered in evidence under Code Ann. § 38-706.1, which deals only with bills, and in that they were offered without any kind of testimony that they had been drawn for payment of the treatment of injuries which the plaintiff received due to the defendant's negligence.

5. The defendant also objects to the charge to the jury that they could reduce future expenses to present value "by any method satisfactory to yourselves" and to the admission in evidence of testimony establishing interest rates in the local community of between five and seven percent. The defendant's objections are based upon *Kitchens v. Hall,* 116 Ga. App. 41 (3) (156 SE2d 920), which required juries to use only a seven percent figure. However, since that time, the General Assembly has established that a five percent figure shall be used for reduction of future expenses to present values. Code Ann. § 38-217 (Ga. L. 1970, pp. 168, 169); *Miller v. Tuten,* 137 Ga. App. 188 (1) (223 SE2d 237); Complaint of Ferrell

Lines, Inc., 389 FSupp. 194 (S.D. Ga. 1975). Any error resulting from the use of a figure in excess of five percent, if the jury chose to do so based upon the evidence presented, would have been to the defendant's benefit.

6. The defendant next objects to the admission in evidence of a table purporting to represent the present value of annuities. Such is clearly admissible for consideration by the trier of fact. Code Ann. § 38-218 (Ga. L. 1970, pp. 168, 169).

7. The defendant makes several enumerations of error concerning alleged inaccuracies in some of the charges to the jury. However, due to the defendant's failure to object at the trial, any possible errors concerning those charges were waived. Code Ann. § 70-207(a) (Ga. L. 1965, pp. 18, 31; 1966, pp. 493, 498; 1968, pp. 1072, 1078).

8. The defendant's final enumeration of error pertains to an alleged excessiveness of the verdict. The $75,000 verdict is not excessive, however. From the evidence a jury could find that the plaintiff was permanently and totally disabled as a result of her fall, that special damages at the time of trial exceeded $45,000, and that her future medical expenses reduced to a present cash value in excess of $200,000.

9. The judgment below having been affirmed on appeal, the issue raised on cross appeal is moot.

*Judgment affirmed. Bell, C. J., and Clark, J., concur.*

ARGUED JULY 13, 1976 — DECIDED OCTOBER 15, 1976.

*Calhoun & Kernaghan, William C. Calhoun,* for appellant.

*George W. Fryhofer,* for appellee.