**Elizabeth Jean MEADER, By and Through her guardian, John B. LONG, Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

No. 88–8508.

United States Court of Appeals, Eleventh Circuit.

Aug. 29, 1989.

Robert S. Greenspan, and Rick Richmond, Appellate Staff, Civ.Div., Washington, D.C., for defendant-appellant.

James M. Thompson, Lee, Smith, Thompson, Black, Scheer & Hart, P.C., Savannah, Ga. and Larry I. Smith, Lee, Smith, Thompson, Black, Scheer & Hart, P.C., Augusta, Ga., for plaintiff-appellee/cross appellant.

Before POWELL[*], Associate Justice (Retired), United States Supreme Court, and RONEY, Chief Judge, and TJOFLAT, Circuit Judge.

TJOFLAT, Circuit Judge:

In this appeal, the Government challenges as excessive certain elements of the money damages the district court awarded appellee under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680 (1982). We find that the challenged elements are not excessive, and accordingly affirm.

[*] Honorable Lewis F. Powell, Jr., Associate Justice of the United States Supreme Court, Retired, sitting by designation.

1. The Government also objects to the district court's failure to deduct "normal living expenses" from its award of lost future earnings, and its failure to limit that award to appellee's current life expectancy. The Government's first objection is frivolous; the Government cites no authority from Georgia or elsewhere for the proposition that an award for lost future earnings must be offset by the living expenses the plaintiff would incur during the period covered by the future earnings. The only cases the Government cites are wrongful death cases, where the survivor's recovery is limited to the net amount lost by reason of the decedent's demise; these cases, though, are facially inappo-

Elizabeth Jean Meader, the appellee, is a spastic quadriplegic, unable to care for any of her basic needs. Her condition is the result of medical malpractice she suffered at the Eisenhower Army Medical Center at Fort Gordon, Georgia. The Government admits that it is liable to appellee under the FTCA for the injuries she sustained at the medical center; given this admission, the district court considered the case on the issue of damages alone.

After hearing the parties' evidence on damages, the district court awarded appellee $6,634,122.00. Of that amount, the court gave appellee $4,651,800 to cover her future medical expenses, and $285,134 to compensate her for the earnings she will lose because she can no longer work.

The Government asks us to set aside the court's award and to remand the case for a reassessment of damages on the grounds that the district court (1) failed properly to discount to present value the damages it awarded for future medical expenses and lost future earnings, and (2) overcompensated appellee for some of her future medical expenses.[1] We discuss these points in order.

## I.

It is a settled principle of law that an award of monetary compensation for future medical expenses and lost future earnings must be adjusted to its present value to account for two factors: first, the interest the award will earn before it is

site. The Government's argument might have merit regarding the amount of lost future earnings awarded beyond appellee's current estimated life expectancy; the Government, however, failed to present any evidence to support such a reduction.

The Government's second objection similarly fails. The gist of its objection is that after it reduces a plaintiff's life expectancy, due to its negligence, the plaintiff is only entitled to recover lost future earnings for that shortened life expectancy. We find no support in case law for such a proposition. Under Georgia law, which seems to be well reasoned, the plaintiff is entitled to recover for all the wages the plaintiff would have earned, but for the injury. *Central Container Corp. v. Westbrook,* 105 Ga.App. 855, 126 S.E.2d 264, 268 (1962).

used to pay for medical expenses or to replace earnings; second, the depreciation the award will suffer over time on account of inflation. *See Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 536–39, 103 S.Ct. 2541, 2550–51, 76 L.Ed.2d 768 (1983). The law of Georgia, which controls the assessment of damages in this case, *see* 28 U.S.C. § 2674 (1982); *Harden v. United States,* 688 F.2d 1025, 1030 (5th Cir. Unit B 1982),[2] embraces this principle. Under Georgia law, it is conclusively presumed that an award of compensation will earn interest at the rate of 5% per annum. Ga. Code Ann. § 51–12–13 (1982); *Piggly–Wiggly S., Inc. v. Tucker,* 139 Ga.App. 873, 229 S.E.2d 804, 807 (1976).[3] The award must therefore be discounted to reflect such interest. As for inflation, Georgia law provides that the inflation rate shall be established by the parties at trial. *See Woods v. Andersen,* 145 Ga.App. 492, 243 S.E.2d 748, 751 (1978). *See also Harden,* 688 F.2d at 1030–31 (discounting future earnings under Georgia law); *Williams v. Adams,* 170 Ga.App. 35, 316 S.E.2d 1, 2 (1984) (discounting future medical expenses).

In the instant case, the district court, following Georgia law, assumed that the award for future medical expenses and lost future earnings would earn interest at the rate of 5% per annum.[4] It then relied on the evidence adduced at trial to determine the inflation rate. The only evidence presented on this point was the opinion testimony of appellee's expert witness, John Brown, an assistant professor of actuarial science at Georgia State University. He stated that the inflation rate would be 5% over the life of the award. Using this rate (and assuming that the award would earn interest at the rate of 5% per annum), he calculated the present value of appellee's lost future wages at $285,134, and the district court accepted his figure. With respect to future medical expenses, Brown testified that medical costs would increase at a rate greater than the 5% inflation rate. He said that this increase over inflation would amount to 3.5%, meaning that the future medical expenses would increase at the rate of 8.5% per annum. The district court rejected the expert's opinion that the cost of medical care would increase at an annual rate that exceeded the inflation rate,[5] and therefore used the 5% inflation rate (together with the 5% statutory interest rate) in adjusting the compensation awarded for future medical expenses.

In sum, the court's adjustment for interest and inflation was a "wash": each item offset the other. The net effect was that no adjustment was made in the amounts the court awarded appellee for future medical expenses and lost future earnings. The Government contends that the district court erred in offsetting the interest rate and the inflation rate. According to the Government, the controlling precedent of *Culver v. Slater Boat Co.,* 722 F.2d 114 (Former 5th Cir.1983) (en banc) (*Culver II*), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3537, 82 L.Ed.2d 842 (1984), required the court to adjust the award for future medical expenses and lost earnings by using the "below-market discount" method; specifically, the court should have discounted these ele-

---

**2.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

**3.** This statutory interest rate is a discount rate, i.e., it is used for the purpose of determining the price of an annuity that, for example, would compensate a party for the earnings he would receive over a given period of time.

**4.** That the court used this 5% figure is implicit in the court's findings of fact and conclusions of law, which it dictated into the record at the conclusion of the trial. Though neither party had urged the court to discount its award for future medical expenses and lost earnings to account for the interest the award would earn, the court did so on its own initiative. The court obviously took judicial notice of the 5% interest rate prescribed by Georgia statutory law, because it held that the interest rate it used was offset by the inflation rate—which had been established by the proof at 5%, as indicated in the text *infra.*

**5.** This conclusion is implicit in the district court's findings of fact and conclusions of law; the court, in adjusting the award for future medical expenses, offset the 5% interest rate and the 5% inflation rate.

ments of damages at a rate of 1 to 3%. *Id.* at 122.[6]

The Government concedes that, on the basis of the evidence before it,[7] the district court was justified in finding that the rates of interest and inflation were identical. *Culver II,* however, in the Government's view, required the district court to reject this evidence and to apply a below-market discount rate of between 1 to 3%. We do not agree.

*Culver II* does state that "fact finders shall determine and apply an appropriate below-market discount rate as the sole method to adjust loss-of-future-earnings [and future medical expenses] awards to present value to account for the effect of [interest and] inflation," *id.* at 117, and that in bench tried cases, "a trial court adopting a [] discount rate between one and three percent will not be reversed if it explains the reasons for its choice." *Id.* at 122. The Government interprets this language as an absolute mandate to district courts: they must adjust downward their awards for these elements of damages by one to three percent.

We do not find such a mandate in *Culver II.* First, the former Fifth Circuit did not take judicial notice, *see* Fed.R.Evid. 201, as the Government's argument implies, that the discount rate normally exceeds the inflation rate by 1 to 3%. The court's opinion, especially its opinion in *Culver v. Slater Boat Co.,* 688 F.2d 280 (Former 5th Cir.1982) (en banc) (*Culver I*), makes this clear: whether the interest rate exceeds the inflation rate and, if so, by what

amount, is open to considerable debate.[8] *See, e.g., Culver II,* 722 F.2d at 118–21; *Culver I,* 688 F.2d at 295–306, 308. Accordingly, *Culver II's* purported mandate is not founded on judicial notice. Its mandate is instead founded on judicial efficiency and economy. As the court observed,

> [a]doption of [the below-market discount rate between one and three percent] guards against the wide disparity in results, the extended duration in trial time, and the increased cost to the parties that may be anticipated if a specific forecast of future price inflation is made anew in each case involving loss of future earnings.

*Culver II,* 722 F.2d at 121. In sum, "it is less complex and time consuming." *Id.* The parties are nonetheless free to litigate the issue of the adjustment that should be made to account for interest and inflation. The *Culver II* court was careful to point out that it is only "in the absence of a stipulation by the parties concerning the method to be used" to account for interest and inflation that "fact finders shall ... apply an appropriate below-market discount rate." *Id.* at 117.

In the case at hand, the parties did not address the issue of adjusting the damages award until the trial was underway and appellee called her actuary to the witness stand. The actuary testified without objection, and as we have noted, the question of how much to adjust the damages award was submitted to the court on the proof presented. The decision in *Culver II* was

---

**6.** *Culver v. Slater Boat Co.,* 688 F.2d 280 (Former 5th Cir.1982) (en banc) (*Culver I*), and *Culver II* presented the question of whether *Johnson v. Penrod Drilling Co.,* 510 F.2d 234 (5th Cir.1975) (en banc), which held that "neither proof, nor argument, nor jury instructions concerning inflationary factors may be considered or used" in arriving at an award for future medical expenses and lost future earnings, should be overruled. *Culver I,* 688 F.2d at 283. The case concerned the application of *Penrod* in "maritime, Jones Act, and FELA personal injury and wrongful death actions." *Id.* Appellee argues that the *Culver* decisions are not applicable to an FTCA case, because the rule of decision is provided by state law. We need not decide whether the *Culver* decisions apply here, because the law of Georgia and the law governing

maritime and FELA cases is the same: an award for future medical expenses and lost future earnings must be adjusted to account for future interest and inflation.

**7.** The evidence referred to is the Georgia statutory interest rate, of which the court took judicial notice, *see supra* n. 4, and the actuary's opinion concerning the inflation rate.

**8.** Federal Rule of Evidence 201 "requires that a judicially noticed fact be one 'not subject to reasonable dispute' in that it is capable of 'accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned' or is generally known." *United States v. Pabian,* 704 F.2d 1533, 1538 (11th Cir. 1983) (quoting Fed.R.Evid. 201).

not mentioned. Under the circumstances, we believe that the parties should be treated as having stipulated to the method that the court actually employed. We therefore find no error in the court's determination of the appropriate discount rate.

## II.

■ The Government's second contention on appeal is that the district court overcompensated appellee for some of her future medical expenses: the Government terms the compensation awarded for these expenses "excessive and duplicative." We judge the district court's award of damages by the clearly erroneous standard. *Cole v. United States*, 861 F.2d 1261, 1263 (11th Cir.1988); Fed.R.Civ.P. 52(a). We will reverse the court only if, after reviewing all the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). This standard does not permit us to reverse the court's findings with respect to appellee's future medical expenses simply because we may be convinced that we would have decided the case differently. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

■ We look to the law of Georgia to decide the question the Government presents. *Johnson v. United States*, 780

F.2d 902, 908 (11th Cir.1986); *see also Shaw v. United States*, 741 F.2d 1202, 1208 (9th Cir.1984). Under Georgia law, an award of damages is only excessive if it is "so exorbitant and flagrantly outrageous as to shock the moral sense," *Valdosta Housing Auth. v. Finnessee*, 160 Ga.App. 552, 287 S.E.2d 569, 571 (1981), or if it is unsupported by the evidence. *Department of Transp. v. Kirk*, 138 Ga.App. 180, 225 S.E.2d 781, 783 (1976).

■ The Government's argument focuses on certain items of medical care and equipment and appellee's need for a residence which could accommodate a person in her condition. The Government contends that the court's award provides for too much care, in terms of the number of medical personnel needed to attend to her needs.[9] The record supports the court's award for such care, and thus we will not disturb it.[10]

The equipment in question is depreciable and must be replaced from time to time during the period of appellee's life expectancy. The Government contends that the court failed to take into account the "trade-in" value of the equipment in determining the amount appellee would need to replace it. The court did not take the trade-in value into account because there was no evidence of such.[11] Under the circumstances, we could hardly fault the district court for not speculating as to the amount of the trade-in value.[12]

---

**9.** The Government's sole witness, however, Doctor Louis O. Manganiello, testified that the life plan for appellee, including all the equipment and care she claimed she needed, was "an excellent plan. It is probably too excellent, but it provides for everything, probably more than is needed."

**10.** In showing that a damage award is excessive, it is appropriate to compare the award with awards in similar cases. *Johnson*, 780 F.2d at 908. This method is most often used to review awards for pain and suffering. Where the challenged award concerns the amount of medical care, comparisons are more difficult since the award is closely tied to the individual's particular injuries and needs. In the instant case, the Government pointed to no similar Georgia cases to show such excessiveness, and we could find none.

**11.** The Government erroneously contends that appellant had the burden of proving the trade-in value of the equipment; in fact, the Government had the burden of proving the trade-in value of the items included in the damage award. *See City of Atlanta v. State Farm Fire & Casualty Co.*, 160 Ga.App. 822, 287 S.E.2d 665, 667 (1982); *Atlanta Commercial Builders, Inc. v. Polinsky*, 148 Ga.App. 181, 250 S.E.2d 781, 783 (1978).

**12.** The Government points to one case, *National Papaya Co. v. Domain Industries, Inc.*, 592 F.2d 813 (5th Cir.1979), to show that it did not have to dispute "each and every" item of damages that appellee proved. In that case, however, the defendant submitted "post-trial briefs [which] direct[ed] the Court's attention to serious and specific deficiencies in the proof of many of the items." *Id.* at 823. Thus, in light of the critique of the plaintiff's evidence in that case, the district court's damage award could be deemed

No dispute exists that, as a result of her injuries, appellee requires a residence designed to accommodate her needs. She introduced evidence as to the cost of such a residence; the cost is reflected in the court's award. The Government contends that the court failed to consider that the residence appellee occupied at the time of trial could have been modified to meet her needs at a much lower price; alternatively, the court failed to deduct the trade-in value of that residence from the cost of the new residence. The court failed to take such steps because the record contained no evidence that appellee owned, in whole or in part, the residence she was occupying at the time of the trial. Again, we could not fault the district court for refusing to speculate about this matter.[13]

The judgment of the district court is AFFIRMED.

clearly erroneous. That case is inapposite here, though, since it was the Government who did not meet its burden by producing evidence of trade-in values or showing that in light of Georgia law the damage award was otherwise excessive. It did not contest either the seriousness of appellee's injuries or even the propriety of the services she required, although it did question the estimated costs of those services. The Government also points to *Luria Bros. & Co. v. Pielet Bros. Scrap Iron & Metal, Inc.*, 600 F.2d 103 (7th Cir.1979), in which the court held that the jury did not have to accept plaintiff's damage computations merely because they were unrebutted. This case is not contrary to our holding today. A fact-finder does not have to accept unrebutted evidence as correct, but can instead draw his own conclusions from such evidence. Considering that appellee sought damages of $20,000,000.00, it seems clear the district court did exercise its own independent judgment in assessing damages.

13. It should be noted that at no time did the Government seek leave of the district court to augment the record so as to establish the trade-in value of the depreciable medical equipment or the existence, and fair market value, of the residence appellee was occupying at the time of the trial.