## A99A0510. KMART CORPORATION v. JACKSON et al.
### (521 SE2d 93)

RUFFIN, Judge.

Marian Jackson sued KMart Corporation for injuries she sustained when she slipped in a pool of detergent and injured her back.[1] Jackson underwent multiple surgeries as a result of her injury and continues to take medication for her ongoing back problems. The jury awarded her $462,000 in damages. In its sole enumeration of error on appeal, KMart argues that the trial court erred in failing to grant a directed verdict because Jackson failed to prove that KMart had either actual or constructive knowledge of the hazardous condition that caused Jackson to slip. For reasons which follow, we affirm.

"The granting of . . . [a] directed verdict is a very, very grave matter." (Punctuation omitted.) *Svc. Merchandise v. Jackson*, 221 Ga. App. 897, 898 (1) (473 SE2d 209) (1996). In directing a verdict, the trial court takes the case away from the jury and substitutes its own judgment for the combined judgment of the jury. Id. In reviewing the trial court's denial of a motion for directed verdict, we construe the evidence most favorably to the party opposing the motion, and we will not reverse the ruling unless the evidence and all reasonable deductions therefrom demand a particular verdict. Id.; OCGA § 9-11-50 (a). " 'On appeal, the standard of review of a trial court's denial of a motion for directed verdict is the "any evidence" standard.' " *Kroger Co. v. Brooks*, 231 Ga. App. 650, 651 (500 SE2d 391) (1998).

Viewed in a light most favorable to Jackson, the evidence showed that she visited a KMart store on July 3, 1991. While Jackson was turning into an aisle that contained cleaning supplies, her shopping cart slipped away. As Jackson grabbed for the cart, she began to slide in a puddle of yellow liquid detergent. Although Jackson never fell, she testified that she "stiffened up" and "felt like lightning was going through" her. After Jackson stopped, she turned around and saw a pool of yellow liquid that spanned the breadth of the aisle and approximately two-thirds of its length.[2] She also saw a bottle cap, but did not see an empty bottle on the floor. She looked at the shelves and saw a bottle without a cap. According to Jackson, immediately after she slipped she was approached by Kennis and a stock boy.[3] She testified that it appeared as if the two were approaching the spill. Kennis asked Jackson "did you go through that," and Jackson responded

---

[1] There was some evidence suggesting the liquid on the floor was bleach rather than detergent.

[2] KMart store manager Jim Kennis testified the aisle was approximately five feet wide and twenty-five feet long. According to Kennis' estimation, the spill was only two feet in diameter.

[3] Kennis testified that he was patrolling the store when he saw Jackson and that the stock boy was not with him when he approached her.

affirmatively. Kennis then told the stock boy to stand by the spill to make sure no one else walked down the aisle while Kennis went to get a mop. Kennis returned with the mop and directed the stock boy to clean the spill. Although Kennis saw an empty detergent bottle, he could not recall who found the bottle or where it was located. Kennis also could not recall the name of the stock boy who cleaned the spill, and at trial, Kennis was the only KMart employee to testify. According to Kennis, he did not know about the spill until he walked up and saw Jackson standing near the puddle.

In order to recover for her injuries, Jackson must prove "(1) that [KMart] had actual or constructive knowledge of the hazard; and (2) that [she] lacked knowledge of the hazard despite the exercise of ordinary care." (Punctuation omitted.) *Kelley v. Piggly Wiggly Southern*, 230 Ga. App. 508, 509 (2) (496 SE2d 732) (1998). Here, KMart asserts that Kennis' unequivocal, uncontradicted testimony that he did not know about the spill before Jackson slipped warrants a directed verdict. We disagree.

As an initial matter, the jury arguably could have found that KMart had actual knowledge of the spill notwithstanding Kennis' testimony to the contrary. There were marked discrepancies between Kennis' and Jackson's testimony regarding the sequence of events. Compare *Lovins v. Kroger Co.*, 236 Ga. App. 585, 586 (1) (a) (512 SE2d 2) (where evidence *uncontradicted*, circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists). Whereas Jackson testified that Kennis and the stock boy approached the spill together, Kennis testified that he was patrolling the store alone and sent for the stock boy only after he saw Jackson near the spill. The jury apparently believed Jackson that Kennis was with the stock boy. If the jury felt Kennis was not truthful, they could have concluded he had something to hide — namely, the reason he was with the stock boy. It is not unreasonable to infer that Kennis, the store manager, directed a stock boy to clean up the spill. We also note that KMart never identified the stock boy. KMart's failure to identify him permits the jury to infer that he could have seen the spill, and that KMart should thus be charged with actual knowledge. See *Straughter v. J. H. Harvey Co.*, 232 Ga. App. 29, 30 (1) (500 SE2d 353) (1998).

Moreover, even if KMart did not have actual knowledge, the jury was authorized to conclude that the store had constructive knowledge. Constructive knowledge can be established "in one of two ways: by evidence that an employee was in the immediate area of the hazard and could easily have discovered and removed it, or by showing that the owner did not use reasonable care in inspecting the premises." *Deloach v. Food Lion*, 228 Ga. App. 393, 394 (491 SE2d 845) (1997).

With regard to the second method, a jury may infer constructive knowledge unless KMart shows "not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident." *Ingles Markets v. Martin*, 236 Ga. App. 810, 811 (513 SE2d 536) (1999). Kennis testified that KMart's inspection policy consisted of having employees walk the store. According to Kennis, as a manager, he would walk from "associate to associate" and that associates would "walk and make sure if there are any customers in the area that need help, whether they're putting out the stock or ringing somebody up. We are constantly walking the store." However, Kennis admitted that employees did not have "scheduled areas" for which they were responsible. Additionally, Kennis never testified that any KMart employee had the specific task of inspecting floors. Under these circumstances, we cannot say that KMart's inspection procedure is reasonable as a matter of law. Rather, we believe that the facts gave rise to a jury issue on the reasonableness of KMart's inspection policy and the jury was authorized to conclude that it was not reasonable. See *Jones v. Krystal Co.*, 231 Ga. App. 102, 104-105 (d) (498 SE2d 565) (1998) (reasonableness of inspection policy was question for jury).

Additionally, we cannot say that KMart established, as a matter of law, that it actually carried out its inspection program on the day Jackson slipped. The only evidence presented in this regard was Kennis' testimony that he was "walking the store" and his estimate that he had "been in [the] vicinity" of the spill "probably 15 minutes, at least" before he saw Jackson. Kennis never stated that he was in the aisle where Jackson slipped, nor did he state that, when he was in the vicinity, he inspected the floor. Compare *Morris v. Ryan's Family Steak Houses*, 206 Ga. App. 369 (425 SE2d 362) (1992) (manager testified that the floor was inspected routinely and clerk averred he inspected the area 30 minutes prior to patron's fall).

"The existence of . . . constructive knowledge is a matter for the jury when there is evidence from which it may be inferred." (Punctuation omitted.) *Brooks*, supra at 654 (1) (a). Although the evidence of KMart's constructive knowledge was not overwhelming, we must remember that

> [i]t is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.

(Punctuation omitted.) *McCarty v. Nat. Life &c. Ins. Co.*, 107 Ga. App. 178, 183 (2) (129 SE2d 408) (1962). As there was some evidence from which the jury could infer that KMart had actual or constructive knowledge, the trial court did not err in denying KMart's motion for directed verdict.

*Judgment affirmed. Johnson, C. J., McMurray, P. J., Pope, P. J., Smith and Eldridge, JJ., concur. Andrews, P. J., dissents.*

ANDREWS, Presiding Judge, dissenting.

KMart Corporation was entitled to a directed verdict because there was an absence of evidence from which the jury could have reasonably concluded that KMart had actual or constructive knowledge of the hazard which caused Jackson to slip and suffer an injury.

There is no evidence in the record which could support a reasonable inference that KMart had actual knowledge of the spilled liquid before Jackson stepped in it. The only direct evidence on this issue was testimony from the KMart store manager that he was not aware of the spill until he saw Jackson standing in an aisle of the store next to a large, obviously visible spill of brightly colored liquid and asked her what happened. The manager recalled that the spill was about two feet long and two feet wide, while Jackson remembered that the spill was a bright yellow liquid covering the entire width of the aisle. The manager testified that, as part of KMart's policy of keeping the premises clean and safe, he walked the store on a constant basis over the course of his shift, and that he discovered Jackson standing next to the spill while he was patrolling the store. The manager further testified that he had walked that vicinity of the store about 15 minutes prior to discovering the spill and Jackson standing next to it. Jackson testified that, when she saw the manager approach her, he was accompanied by a stock boy. The manager testified that there was no stock boy with him when he first discovered the spill. According to Jackson, neither the manager nor the stock boy had any cleaning equipment with them when they approached her. It was undisputed that a KMart stock boy later cleaned up the spill after it was discovered.

Based on this evidence, the majority finds that the jury could have reasonably concluded the manager was lying about the presence of the stock boy with him and then inferred that the lie was to conceal the fact that the manager was walking to the spill with the stock boy to direct the stock boy to clean up the spill — thus showing that KMart had prior actual knowledge of the spill. Majority op. p. 177. To draw these inferences from the bare fact that Jackson saw a stock boy with the manager is pure speculation. At best this evidence would support the mere possibility that KMart had prior actual knowledge of the spill. In fact, when Jackson's counsel asked Jackson

at trial what she surmised the manager and the stock boy knew about the spill, the trial judge sustained defense counsel's objection that the question called for speculation. A reasonable inference sufficient to create a triable issue of fact cannot be based on mere possibility, conjecture, or speculation. *Pafford v. Biomet*, 264 Ga. 540, 544 (448 SE2d 347) (1994); *Butler v. Huckabee*, 209 Ga. App. 761, 762 (434 SE2d 576) (1993).

Citing *Straughter v. J. H. Harvey Co.*, 232 Ga. App. 29, 30 (500 SE2d 353) (1998), the majority further concludes that KMart's failure to identify the stock boy permits the jury to reasonably infer that the stock boy, and thus KMart, had prior actual knowledge of the spill. Majority op. p. 177. This conclusion is based on *Straughter's* application of the rebuttable presumption created in OCGA § 24-4-22. Id. at 30-31. Section 24-4-22 provides that:

> If a party has evidence in his power and within his reach by which he may repel a claim or charge against him but omits to produce it, or if he has more certain and satisfactory evidence in his power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against him is well founded; but this presumption may be rebutted.

By creating an adverse presumption of fact, this Code section imposes a penalty on a party for withholding evidence within the party's power to produce and for relying on evidence of a weaker nature. *Fields v. Yellow Cab Co. &c.*, 80 Ga. App. 569, 571 (56 SE2d 845) (1949); *Speagle v. Nationwide &c. Ins. Co.*, 138 Ga. App. 384, 387 (226 SE2d 459) (1976). Without saying so explicitly, the majority concludes that it was within the power and control of KMart to identify and produce the stock boy and that its failure to do so gives rise to an adverse presumption of fact under OCGA § 24-4-22. This is a misapplication of the rule set forth in OCGA § 24-4-22.

There is absolutely no evidence that KMart knew of and withheld the identity of the stock boy. The manager testified that a stock boy cleaned up the spill after it was discovered, but that he could not recall his name. The record shows that Jackson's injury occurred in 1991, that she did not file suit until 1996,[4] and that the manager, who had long since moved on to another store, was testifying from memory at a trial in 1998. The record also shows that, at Jackson's request, KMart produced the names of all its employees working at the store during the period when the accident occurred.

---

[4] No issue was raised on appeal as to application of the two-year statute of limitation in OCGA § 9-3-33, and the record is also silent on this issue.

In *Cotton States Fertilizer Co. v. Childs*, 179 Ga. 23, 31 (174 SE 708) (1934), the Supreme Court cautioned that the principle set forth in OCGA § 24-4-22 applies only in cases where it is shown that a party has withheld evidence within the party's power and control and held that an instruction on OCGA § 24-4-22 "can be given in charge only in exceptional cases, and the greatest caution must be exercised in its application." Jackson did not request a jury charge, and none was given by the trial court on the adverse presumption arising from OCGA § 24-4-22. The sua sponte invocation of this adverse presumption by the majority is a strained attempt to find a factual issue on actual knowledge by attempting to give substance to an inference based on pure possibility, speculation, or conjecture.

I also disagree with the majority's conclusion that there was evidence in the record sufficient to show that KMart had constructive knowledge of the spill.

> Constructive knowledge can be shown in either of two ways: (i) by presenting evidence that an employee of the defendant was in the immediate area of the dangerous condition and could have easily seen the substance and removed the hazard; or (ii) by presenting evidence that the substance was on the floor for such a time that (a) it would have been discovered had the proprietor exercised reasonable care in inspecting the premises and (b) upon being discovered, the substance would have been cleaned up had the proprietor exercised reasonable care in cleaning the premises.

*Lovins v. Kroger Co.*, 236 Ga. App. 585, 586 (1) (b) (512 SE2d 2) (1999). There was no evidence that an employee of KMart was in the immediate area of the hazard, so the issue as to constructive knowledge related to the second method of proof.

Under the second method of proving constructive knowledge, where the proprietor shows that it had a reasonable inspection procedure that was followed on the day of the injury, this is sufficient to show that reasonable care was exercised to keep the premises safe, and thus no constructive knowledge can be charged to the proprietor. *Morris v. Ryan's Family Steak Houses*, 206 Ga. App. 369 (425 SE2d 362) (1992); *Drake v. Kroger Co.*, 213 Ga. App. 72, 73 (443 SE2d 698) (1994). At the trial, the manager was specifically asked, "[H]ow did y'all go about making sure that the premises were clean and safe, the floors were safe for your customers?" The manager responded that, in addition to associates who were responsible for specific parts of the store, as manager he walked the entire store on a constant basis over the course of his shift, and that he had walked the vicinity of the store where Jackson was injured about 15 minutes prior to returning

to the area and discovering the spill with Jackson standing next to it. This testimony plainly shows that an inspection procedure for keeping the floors safe was in place and that the manager had conducted an inspection of the area where the spill occurred about 15 minutes before he later discovered the spill in the same area. In responding to the question about how the floor was inspected, it was not necessary, as the majority holds, that the manager specifically say he was in the aisle or that he inspected the floor. Common sense and a fair reading of plain English show that the manager said he inspected the floor area where the spill occurred without finding anything about 15 minutes before the accident. This testimony established as a matter of law that KMart conducted a reasonable inspection of the floor area and therefore had no constructive knowledge of the spill. Id.

Moreover, even if KMart had produced no evidence of adherence to reasonable inspection procedures on the day of the accident, the absence of any evidence showing how long the spill had been on the floor rendered it impossible for a jury to reasonably conclude that the spill had been on the floor long enough to have been discovered by a reasonable inspection. If the spill had not been on the floor long enough to have been discovered by a reasonable inspection, then any failure by KMart to conduct a reasonable inspection could not be the cause of the accident.

> On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

(Citations and punctuation omitted.) *Nelson v. Polk County Historical Society*, 216 Ga. App. 756, 757 (2) (456 SE2d 93) (1995). As the Supreme Court held in *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991), in the context of summary judgment, a defendant who does not carry the burden of proof at trial is not required to produce evidence that its alleged negligence was not the proximate cause of the plaintiff's injury. Rather, the absence of such evidence is sufficient to entitle the defendant to a favorable verdict. Id. Without any evidence as to how long the spill had been on the floor, it was a matter of pure speculation or conjecture for the jury to conclude that the spill had been there long enough so that the proximate cause of

the accident was KMart's failure to discover and remove the spill by conducting a reasonable inspection. It follows that the trial court erred by refusing to direct a verdict in favor of KMart.

DECIDED JULY 16, 1999 ▮▮▮▮▮▮▮▮▮

*Alston & Bird, James C. Grant, Jeffrey J. Swart*, for appellant. *Victor Hawk*, for appellees.